The Evansville Public Hall Company *v.* The Bank of Commerce.

No. 17,670.

## THE EVANSVILLE PUBLIC HALL COMPANY *v.* THE BANK OF COMMERCE.

CORPORATION. — *Obligation Incurred by President.*— *Liability.*— *Agency.*—A corporation is liable on obligations incurred by its president, without direct authority, either by virtue of his office or by express sanction of the board of directors, where he is held out by the managers in the general course of business as having such authority. (See note at end of opinion.)

SAME. — *Note by One Corporation in Favor of Another.* — *Common Directors.* — A note made by one corporation in favor of another is not invalid merely because the two corporations have common directors, where it represents a debt justly owing from the maker to the payee.

From the Vanderburgh Superior Court.

*Garvin & Cunningham,* for appellant.

*J. E. Williamson* and *Gilchrist & DeBruler,* for appellee.

HOWARD, J.—The Bank of Commerce, the appellee here, sued the Evansville Public Hall Company, the appellant, to recover on a promissory note for $3,700. In a second paragraph of complaint, subsequently filed, the bank sought to recover $3,600 for money expended for the use of the company.

In the third paragraph of its answer, the company averred that the note described in the complaint was executed by David J. Mackey, president of the company, and that he had no authority either to incur the indebtedness or to execute the note in suit.

In a fourth paragraph of answer, it was averred that the company was organized for the purpose of buying, holding and improving real estate; that the

amount of the capital stock was fixed at $35,000; that at or about the time the articles of incorporation were prepared, and before they were signed, a meeting was held for the purpose of effecting such organization; that for the purpose of inducing other stockholders to subscribe to the capital stock the said Mackey proposed and agreed that if they would subscribe for the stock he would undertake the erection of the building, would put in the real estate and take stock therefor, and that the entire cost of the real estate and the improvements should not exceed the capital stock of the company; that he then and there agreed that if he did not succeed in getting other persons to subscribe for the remainder of the stock he would himself take whatever additional stock was necessary to complete the building; that at the date of said meeting, and continuously thereafter until the completion of the building, the said Mackey was largely interested in and was a director of said bank; that he was also president of said company, and occupied said positions in the bank and in the company until after the completion of the building; that shortly after said meeting, one E. P. Huston, president of the bank, became secretary and treasurer of the company; that during the whole of said time a majority of the directors of the company were directors of the bank; that in pursuance of said agreement Mackey did proceed to secure bids and have the building erected, the said Huston having full knowledge of all the facts; that on the completion of the building Mackey addressed a communication to the stockholders of the company, stating that the building was completed and paid for, whereupon the other stockholders paid their subscriptions in full; that at no time during the progress of the erection of said building did the stockholders have any knowledge of any indebtedness

thereon; and at no time did the directors of the company authorize Mackey to incur any such indebtedness, or to execute the note sued on.

The reply to the third and fourth paragraphs of the answer alleged that the company borrowed of the bank $4,800, which money was used by the company in the erection of said building; and being so indebted the president of the company executed the note set out in the complaint; and thereafter the company, by its board of directors, at a legally constituted meeting, ratified and confirmed the action of the president in borrowing said money. To this reply a demurrer was overruled.

The cause was submitted to the court for trial, and there was a finding and judgment in favor of the bank for the amount claimed on the note.

It is assigned as error that the court overruled the demurrer to the reply, and also overruled the motion for a new trial. The briefs are devoted almost wholly to the last assignment; and we are of opinion that the merits of the appeal may be fully and fairly determined in considering the motion for a new trial.

The reasons given in the motion for a new trial were that the decision was contrary to law and contrary to the evidence.

From the evidence it appears that the action of Mackey, as president, in giving the note of the company to the bank, was approved by the directors of the company; it also appears that the majority of the directors thus giving their approval to the president's action were also directors of the bank.

Considering this action of the directors of the company, there is no doubt, as well said by counsel for appellant, that "where the same directors act in two companies their contracts are closely scrutinized, and will not be upheld unless manifestly fair."

This, also, is in substantial agreement with the contention of counsel for appellee.   Citing 3 Thompson Corporations, Sec. 4079, and following, that "while a contract between two corporations having common directors may be voidable, it is only so when the contract is in fraud of the interests of one of the corporations, and will never be set aside by the courts where the honesty of the transaction is manifest."

If, therefore, it should appear from the evidence, as we think it does, that the sum due the bank from the company was justly owing, we think the judgment of the court should not be disturbed for the reason, if it should be so, that the president may not have had unquestionable authority to incur the debt contracted.

While a president, or other officer, of a corporation may have no authority by virtue of his office, or by express sanction of the board of directors, to incur obligations in behalf of the corporation, yet if he is held out by the managers, in the general course of business, as being the agent of the corporation, with such authority, his acts in incurring obligations will be binding upon the corporation.   *Fifth Ward Savings Bank* v. *First Nat'l Bank* (N. J.), 7 Atl. Rep. 318; 4 Am. and Eng. Ency. of Law, 227, and authorities cited in note 3.

There is no question that Mr. Mackey was the moving spirit and chiefly interested in the affairs of the company.   Of the 434 shares of stock named in the articles of incorporation as then subscribed, ten stockholders together had subscribed for 114 shares, while Mr. Mackey alone had subscribed for 320 shares.   On the day of the organization it was understood and agreed by all the stockholders that he should go ahead and erect the building, a theater, and have it ready in time for the coming season.

One of the witnesses for the appellant testifies: "Everything was in a great hurry to get the building done and the contracts out, to get ready so as not to lose the season. The meeting to organize was held on the 17th or 18th of July, and the building was completed the 7th of November."

During all this time the stockholders, except one, resided in the City of Evansville, and knew that Mr. Mackey was engaged in erecting the building.

The contractors were paid by him in checks upon the appellee bank. In this way the company's funds were sometimes overdrawn, and then deposits to its credit made the fund good again. The checks, however, were always honored; and every cent that was drawn from the bank went into the building to pay for labor and material. On the completion of the building, it was found that there had been overdrafts to the amount of $3,700, and for this balance the note in suit was given.

It is claimed by the stockholders of appellant that on the day of the organization, it was agreed by Mr. Mackey that the building and grounds should not cost over the amount of the capital stock, $35,000, and that it was on faith in this agreement that their stock was subscribed.

An examination of the evidence, however, fails to show any such agreement; though it does show that Mr. Mackey and all the stockholders intended that the total cost should not be outside those figures, and that all expenses should be paid out of money received on the shares of capital stock. There was nothing in the nature of a guarantee that the cost should be so limited; though it is evident that the belief and expectation of all parties concerned was that the amount of the stock should be the limit of all costs and expenses, and that all liabilities should be

paid out of such stock. The plant when completed did cost about $41,000. We see nothing in this to show fraud on the part of the projector, nothing to show that the cost was not kept down to the lowest figure possible, and nothing to show that the building and grounds are not fully worth the cost.

It is manifest, finally, that Mr. Mackey, the chief person interested, paid for the building and grounds by his checks, and that, as often happens, it turned out after the work was completed that the cost was greater than anticipated by the sum of $3,700. He was in good financial standing when the work was done, but at the time of the trial had become insolvent. We are unable to see, however, that any wrong was done to any one, or that the debt of the company to the bank was not legally and honestly incurred.

The judgment is affirmed.

Filed February 19, 1896.

NOTE.—The powers of a president and vice-president of a corporation are the subject of a note to *Wait* v. *Nashua Armory Asso.* (N. H.), 14 L. R. A. 356.