GASQUET et al. v. FIDELITY TRUST & SAFETY–VAULT CO.

(Circuit Court of Appeals, Fifth Circuit.   June 15, 1896.)

No. 479.

RAILROAD MORTGAGES— DUTY OF TRUSTEE.

The M. Street-Railway Co. owned and operated a street railroad in the city of M., and also owned nearly all the stock of the S. H. Railroad Co., another street-railroad corporation, operating a street railroad in the same city.   The officers and directors of the two companies were the same. In August, 1887, the M. Railway Co. mortgaged all its property, including its stock in the S. H. Co., to the F. Trust Co., to secure an issue of bonds, the mortgage providing that, until default, the legal title and voting power of the stock of the S. H. Co. should remain in the M. Co.   In October, 1890, no default having then occurred, and the S. H. Co. being indebted in a considerable amount to the M. Co., the S. H. Co., by vote of its directors, made a mortgage on its property to the F. Trust Co., to secure an issue of bonds which were turned over to the M. Co., to be used as collateral for or sold to pay the indebtedness of the S. H. Co. to the M. Co., and the same were used by the M. Co. to secure indebtedness of its own.   Default was afterwards made by the M. Co. on its bonds.   The F. Trust Co. instituted suit for foreclosure, and the property was sold for less than the amount of the bonds.   Some of the bondholders filed a cross bill, alleging a breach of trust by the F. Trust Co. in accepting the mortgage of the S. H. Co., and asking that it be deprived of compensation, and required to account for any loss from such breach of trust.   *Held*, that the acceptance of the mortgage, under the circumstances, constituted no breach of trust, but was proper and beneficial to the bondholders.

Appeal from the Circuit Court of the United States for the Southern District of Alabama.

The case as stated in the appellants' brief is in the main adopted, and is as follows:   The appellee, on January 20, 1892, filed an original bill, alleging that on the 15th day of August, 1887, the Mobile Street-Railway Company, a corporation owning and operating a street railway in the city of Mobile, in the state of Alabama, executed, issued, and put into circulation 600 coupon bonds, aggregating $500,000, and executed and delivered to complainant, as trustee, a deed of trust or mortgage upon all of its property and franchises, to secure the same; that, as an additional security for these bonds, the Mobile Street-Railway Company hypothecated 900 of the 1,000 shares of the capital stock of the Mobile & Spring Hill Railroad Company; that the hypothecation of this stock was duly noted upon the books of the company, but that it was expressly understood that the legal title to said stock was not to be transferred to the trustee, except in case of default in the payment of the bonds and coupons, and that, until such default, the voting power of said stock was to remain with those who appeared upon the books of the company as the legal holders of the stock; that the interest coupons upon said bonds matured on the 1st day of January and July of each year; that all interest that became due prior to the 1st day of July, 1891, was paid, but that the company made default in the payment of the interest July 1, 1891, and also January 1, 1892; that it was provided by said deed of trust that the Mobile Street-Railway Company should retain the control and management of the mortgaged property until default was made under the deed of trust, but that in case of default in the payment of interest, etc., and the continuance of default for the period of three months, the principal of the bonds should become due, and that the trustee might take possession of the property, and foreclose the deed of trust, either with or without the aid of the courts; that complainant did not think it advisable to foreclose the deed of trust upon the happening of the first default, but, because of the second default, it thought a foreclosure through the courts to the best interest of the cestui que trust.   The bill further alleges that complainant was not advised who were the holders of a large number of said bonds, and that it will be "nec-

essary, in the progress of this cause, and in due time, that publication should be made, and said holders of said several bonds should be required to come in and propound their claims in this court." The prayer of the bill is that the court "take jurisdiction of the subject-matter of this bill"; that it declare the whole debt due, ascertain the amount thereof, cause the property, including the 900 shares of stock, to be sold, and for "such other further or different relief as in equity and good conscience it ought to have." Under this bill, the property was foreclosed and sold, the 900 shares of the stock of the Mobile & Spring Hill Railroad Company bringing $6,300, and the remaining property and franchises $225,000. The appellants are the holders of $400,000 and more of the bonds of the Mobile Street-Railway Company, and filed a petition, in the nature of a cross bill, against the appellee, alleging a breach of trust by appellee, praying that appellee be disallowed any compensation, and that it be further required to account to appellants for such loss as appellants sustained by reason of such breach of trust. The breach of trust alleged consisted in appellee's accepting the trusteeship under, and enforcing, a deed of trust improperly and illegally made by the Mobile & Spring Hill Railroad Company upon its property and franchises, after 900 shares of the capital stock had been hypothecated, to secure the bonds of the Mobile Street-Railway Company.

The Mobile Street-Railway Company and the Mobile & Spring Hill Railroad Company were each street-railway corporations under the laws of Alabama, owning and operating distinct street-railway lines in the city of Mobile. The total capital stock of the Mobile & Spring Hill Railroad Company consisted of 1,000 shares, and of this stock the Mobile Street-Railway Company owned 900 shares. On the 15th day of August, 1887, the Mobile Street-Railway Company executed to appellee, as trustee, a mortgage or deed of trust upon all of its property, including said 900 shares of the capital stock of the Mobile & Spring Hill Railroad Company. By the terms of this mortgage, the voting power of the stock was retained by the person holding the legal title to the stock until default should be made in the payment of the bonds secured by the deed of trust. The certificate of this stock was at once deposited with, and retained by, appellee; but the title to the stock was not transferred to it upon the books of the Mobile & Spring Hill Railroad Company until about February 1, 1892. From the time that appellee became trustee under this mortgage, and ever thereafter, nearly all of the stock of the Mobile & Spring Hill Railroad Company belonged to the Mobile Street-Railroad Company, but was placed in the name of its attorneys and employés, to qualify them to act as directors of the Mobile & Spring Hill Railroad Company. The two roads had practically the same officers and directors and attorneys, and were used and operated as one property; the directors being the attorneys and employés of both companies. The appellee did not actually know that the same persons were directors in both companies, but it knew that a syndicate composed of W. M. Duncan, R. K. Warren, and others had bought up the stock of both roads, and that the roads were substantially under the same management, and that the same person was general manager of one road and president of the other, and that the same firm was the attorneys of the two roads. On October 13, 1890, the Mobile & Spring Hill Railroad was indebted to the Mobile Street-Railway Company in a considerable sum, but the amount thereof was not ascertained. The earnings of the two roads had been used as a common fund, and their expenses paid from the joint funds. Part of the expenses were joint, and part were separate. The joint expenses had been prorated between the companies, and the separate expenses had been charged to the company for the benefit of which they were made.

On October 13, 1890, the Mobile Street-Railway Company had become financially embarrassed; and, for the purpose of relieving its embarrassment, $100,000 of bonds were issued by the Mobile & Spring Hill Railroad Company, and secured by a mortgage or deed of trust upon all of its property or franchises. The directors that authorized this mortgage consisted of the attorneys and employés of the Mobile Street-Railway Company, and were also the attorneys and employés of the Mobile & Spring Hill Railroad Company; and they were specifically authorized, empowered, and directed by a resolution of the Mobile Street-Railway Company to make this mortgage. Before

this mortgage was made, Mr. R. K. Warren, who was both the general manager of the Mobile Street-Railway Company and the president of the Mobile & Spring Hill Railroad Company, applied to appellee to become trustee under the proposed deed of trust of the Mobile & Spring Hill Railroad Company; and appellee, without inquiry as to the purpose, necessity, or propriety of the deed of trust, accepted the trust. Appellee, at this time, did not actually know the purpose for which the bonds were proposed to be issued, nor did it make any inquiry in regard thereto. It did, however, know that the two companies were being operated under the same management, and the language used in requesting appellee to become trustee referred to the deed of trust made by the Mobile Street-Railway Company as made in the same interest as the then proposed deed of trust on the property of the Mobile & Spring Hill Railroad Company. The bonds of the Mobile & Spring Hill Railroad Company were then issued, turned over to R. K. Warren, as the president of that company, and retained by him in that capacity until May 6, 1891, and the actual possession of the bonds was not then changed; but said Warren reported to the directory of the Mobile & Spring Hill Railroad Company that he had delivered the bonds of the Mobile Street-Railway Company as collateral security. The bonds then continued to be held by him until about the 12th day of January, 1892, when 92 of them were hypothecated by the Mobile Street-Railway Company, to secure notes given by it, and indorsed by said Warren, in the name of the Mobile & Spring Hill Railroad Company. At this time the Mobile & Spring Hill Railroad Company was indebted to the Mobile Street-Railway Company in the sum of $69,352.36, for betterments and repairs, and the 92 bonds turned over were to be sold to pay, or used as collateral to secure, such indebtedness. About the same time, the Mobile Street-Railway Company owed in bills payable over $100,000, and had a floating debt of over $140,000. Default was made in payment of interest upon the bonds of the Mobile Street-Railway Company, July 1, 1891, and appellee was officially notified thereof in September, 1891. At this time the bonds of the Mobile & Spring Hill Railroad Company were still in the hands of R. K. Warren, undisposed of. On January 20, 1892, appellee filed a bill in equity in the United States circuit court to foreclose the mortgage of the Mobile Street-Railway Company; and on February 5, 1892, it filed a bill in the state chancery court to foreclose the deed of trust of the Mobile & Spring Hill Railroad Company. In this last-named suit the Mobile & Spring Hill Railroad Company was the sole defendant. Process was served on R. K. Warren, as president, and a decree pro confesso was taken against the company. A decree of foreclosure was rendered, and the property sold in January, 1893, for $109,000. A decree foreclosing the deed of trust of the Mobile Street-Railway Company was also had, and the property covered thereby sold November 14, 1892; and this sale was confirmed December 16, 1892, and January 4, 1893. The indebtedness due to the bondholders of the Mobile Street-Railway Company aggregated $535,706.32. The property and franchises of the company sold for $225,000, and the 900 shares of the stock of the Mobile & Spring Hill Railroad Company sold for $6,300, leaving an unpaid indebtedness of over $300,000 due to the bondholders. The only lien upon the property of the Mobile & Spring Hill Railroad Company other than this deed of trust was a prior mortgage for $8,000. Upon the final hearing, the court dismissed the bill, without giving any reason for its action.

For former reports see 6 C. C. A. 253, 57 Fed. 80; 54 Fed. 26; 53 Fed. 687, 850.

Gregory L. Smith and H. T. Smith, for appellants.

D. P. Bestor, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge (after stating the facts as above). The mortgage of the Mobile Street-Railway Company to the Fidelity Trust & Safety-Vault Company contained this provision:

"There is hypothecated with the said trustee, as an additional security for the payment of the bonds herein mentioned, 900 of the 1,000 shares of the capital stock of the Mobile & Spring Hill Railroad Company, of the par value of ninety thousand dollars, which stock is to be held in trust and disposed of by said trustee as hereinafter mentioned. The said hypothecation is noted in the transfer books of said Mobile & Spring Hill Railroad Company, in accordance with law, for the protection of said trustee; but it is expressly understood that the legal title to said stock is not to be transferred to said trustee, except in case of default in the payment of said bonds and coupons hereinafter provided; and until such default the voting power of said stock is to remain with those who appear upon the books of said Mobile and Spring Hill Railroad as the legal holders thereof; and said legal holder or holders shall till such default have the right to collect and apply to his or its or their own use all dividends declared on the stock."

At the time that the Mobile & Spring Hill Railroad Company executed a mortgage to the Fidelity Trust & Safety-Vault Company, there had been no default in the payment of bonds and coupons secured by the Mobile Street-Railway Company mortgage. It follows that the Mobile Street-Railway Company had the right to vote the stock held by it in the Mobile & Spring Hill Railroad Company in favor of the issuance of bonds secured by mortgage by the Mobile & Spring Hill Railroad Company to fund and pay off the indebtedness of that company. At the time the Mobile & Spring Hill Railroad Company issued its bonds secured by mortgage, it had outstanding a prior mortgage to Levy & Ingate to secure the sum of about $8,000; and it was indebted to the Mobile Street-Railway Company in the sum of $69,352.36, besides having other floating indebtedness. As, with the consent of a majority of its stockholders, and under a vote of its directors, the Mobile & Spring Hill Railroad Company granted a mortgage to secure an issue of bonds to provide for its bonded indebtedness, and to pay off and secure its floating indebtedness, and as the bonds issued were so applied, it seems clear that, in the absence of specific fraud, the issue of bonds as aforesaid could not be successfully attacked at the suit of any stockholder, nor of any creditor who is benefited by the transaction. The fact that the directors of the Mobile Street-Railway Company were many, if not all, of them also managers and directors of the Mobile & Spring Hill Railroad Company, and participated in and directed the action of the last-named company in issuing the bonds aforesaid, does not of itself render the transaction void, or, in the absence of specific fraud, voidable. The case shows that the Mobile Street-Railway Company owned nearly nine-tenths of the stock of the Mobile & Spring Hill Railroad Company, and was the direct beneficiary of the issue of the bonds aforesaid, because it received the proceeds of the bonds; and, as those proceeds were applied to the reduction of the floating debt of the Mobile Street-Railway Company, it seems to follow that the whole transaction resulted in direct benefit to the bondholders of the Mobile Street-Railway Company, as to that extent it relieved the property of the Mobile Street-Railway Company of obligations liable, if not actually entitled, to be given priority in payment over the claims of the said bondholders.

The main contention in this case, and upon which the appellants' whole case is based, is that the acceptance by the Fidelity Trust &

Safety-Vault Company, as trustee in the mortgage granted by the Mobile & Spring Hill Railroad Company, ipso facto was a breach of trust, entitling the bondholders secured by the mortgage of the Mobile Street-Railway Company to the Fidelity Trust & Safety-Vault Company to recover damages from their trustee, and depriving their said trustee of all right to compensation for the services rendered in execution of and in pursuance of the mortgage. On the particular facts of this case, we agree with the judge of the circuit court that the contention is not well taken. It is difficult to see wherein and whereby the acceptance by the Fidelity Trust & Safety-Vault Company of the position of trustee under the mortgage of the Mobile & Spring Hill Railroad Company was at all detrimental to the appellants. On the contrary, considering that the Mobile Street-Railway Company was the principal owner and actual operator of the Mobile & Spring Hill Railroad, the transaction was for the benefit of the Mobile Street-Railway Company, and, besides, was, so far as this record goes, valid and binding upon the Mobile Street-Railway Company and its stockholders, and indirectly inured to the benefit of the appellants. We are of opinion that the same trustee, under both mortgages, was beneficial rather than injurious to the bondholders secured by the mortgage of the Mobile Street-Railway Company. At all events, as the appellants were not injured by the alleged inconsistent action of their trustee, the ruling of the circuit court dismissing their bill should be, and the same is hereby, affirmed.