MARCY v. GUANAJUATO DEVELOPMENT CO. et al.

(District Court, D. New Jersey. December 1, 1915.)

1. CORPORATIONS ⬤═430—VOIDABLE CONTRACTS—PARTICIPATION OF DIRECTORS IN BENEFITS.

A contract of a corporation, in the benefit of which one or more of its directors participates without the consent of the corporation, is voidable at the option of the latter, exercised within a reasonable time.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1660–1663; Dec. Dig. ⬤═430.]

2. CORPORATIONS ⬤═318—CONTRACTS BETWEEN CORPORATIONS HAVING COMMON DIRECTORS—VALIDITY.

The fact that the same persons are members of the boards of directors of two corporations does not give a dissenting stockholder an arbitrary right to avoid a transaction between them, but does give him the right to subject it to the scrutiny of the court, and casts upon the corporation or the directors concerned the burden of showing that the transaction is fair and absolutely free from fraud.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. ⬤═318.]

3. CORPORATIONS ⬤═487—LIABILITY IN RESPECT TO CONTRACTS ULTRA VIRES.

Under the rule approved by the Supreme Court of the United States, money or property obtained by a corporation through an ultra vires contract may be recovered back; but the corporation is not liable, where the money or property was received by a third party, although incidentally benefited thereby.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. ⬤═487.]

4. CORPORATIONS ⬤═318—TRANSACTIONS BETWEEN—VALIDITY—COMMON DIRECTORS.

A note given by one corporation to another, and secured by a pledge of collateral, *held* based on a valid indebtedness, and valid; and the action of the creditor in selling the collateral also *held* within its rights, and not impeachable by stockholders of the debtor corporation, on the ground that the two corporations had common directors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1363, 1364; Dec. Dig. ⬤═318.]

In Equity. Suit by Henry O. Marcy against the Guanajuato Development Company and the Securities Corporation, Limited. On final hearing. Decree for defendants.

Crocker & Wickes, of New York City, for plaintiff.

Decker, Allen & Storm, of New York City, for defendant Guanajuato Development Co.

HAIGHT, District Judge. The plaintiff sues, in a representative capacity, as a stockholder of the defendant the Securities Corporation, Limited (which will hereafter, for convenience, be referred to as "Securities Corporation"), to set aside and cancel a demand promissory note given by it to the defendant Guanajuato Development Company (which will hereafter be referred to as "Development") dated September 1, 1911, for $350,634.08; a sale made by Development of the securities pledged as collateral for the payment of the note; an assignment of a claim of Securities Corporation against a corporation known

as the "Refugio Syndicate"; for an accounting; and an injunction against the Development Company voting certain of the stock so sold. At the time the transactions complained of took place, seven of the nine directors of each company were the same persons, and the personnel of the executive committee of each board was the same. This is the main ground upon which the plaintiff rests his right to recover in this action. He, of course, contends that the actions complained of were detrimental to Securities Corporation. It is necessary, therefore, to determine at the outset the rule which governs courts of equity in scrutinizing and passing upon transactions between corporations having boards of directors each composed, in part, of the same persons.

[1] It is the settled rule in New Jersey (the place of incorporation of both of these companies) that a contract of a company, in the benefit of which one or more of its directors participates, without the consent of the cestui que trust, is voidable, at the option of the latter, exercised within a reasonable time. Stewart v. Lehigh Valley R. R. Co., 38 N. J. Law, 505; United States Steel Corp'n v. Hodge, 64 N. J. Eq. 807, 54 Atl. 1, 60 L. R. A. 742. The same rule has the sanction of the United States Supreme Court (Thomas v. Brownsville, etc., R. R. Co., 109 U. S. 522, 3 Sup. Ct. 315, 27 L. Ed. 1018), and is supported by the great weight of authority. There is, however, no evidence in this case that any of the common directors had any personal beneficial interest in any of the transactions complained of. This rule, however, has not been generally applied to transactions between corporations, where the only vice is the identity of one or more members of the respective boards of directors.

[2] Without attempting to review the authorities on this point, I think that the rule which is supported, both by reason and the weight of authority, is that the presence of directors on both sides of a transaction does not give a dissenting stockholder an arbitrary right to avoid the transaction, but does give him the right to subject it to the scrutiny of the court, and casts upon the corporation or directors concerned the burden of showing that the transaction is fair and absolutely free from fraud. Robotham v. Prudential Insurance Co., 64 N. J. Eq. 673, 709, 53 Atl. 842; Leavenworth v. Chicago, etc., R. Co., 134 U. S. 688, 707, 10 Sup. Ct. 708, 33 L. Ed. 1064; Geddes v. Anaconda Copper Mining Co., 197 Fed. 860, 865 (D. C. Montana); Smith v. Chase & Baker Piano Mfg. Co., 197 Fed. 466 (D. C. E. D. Mich.); Evansville, etc., Co. v. Bank of Commerce, 144 Ind. 34, 42 N. E. 1097; Gasquet v. Fidelity Trust & Safety Vault Co., 75 Fed. 343, 346, 21 C. C. A. 382 (C. C. A. 5th Cir.); Davidson v. Mexican Nat. R. Co., 58 Fed. 653, 663 (C. C. E. D. N. Y.). See, also, Cook on Corp'ns (7th Ed.) vol. 3, § 658, and cases there cited; Thompson on Corp'ns, vol. 7, § 8502. The transactions complained of in this suit will, therefore, be examined in the light of this rule.

The note in question was given as evidence of what was considered an indebtedness due from Securities Corporation to Development. The stocks pledged as collateral security for the payment of the note, together with an assignment of a claim of Securities Corporation against the Refugio Syndicate, constituted practically all of the assets of Securities Corporation. The debt was of long standing, and the pledged

securities of very uncertain value. If the debt was legally due and owing, there was nothing unfair or fraudulent on the part of the directors representing Development in demanding the note and security, or on the part of the same directors, representing Securities Corporation, in complying with the demand. The mere fact that there were common directors would not change the clear right of the creditor to demand, and the debtor to give, not only evidence of the indebtedness, but collateral security for its payment. The stockholders of Securities Corporation were not entitled to any greater rights than they would have had, had the directors of Securities Corporation been entirely independent. If they had been independent, it is hardly conceivable that they would not have given the note and the security, if demanded; nor is it conceivable that the directors of Development, when the existence of an indebtedness of that size and the financial condition of Securities Corporation was brought to their attention, would not have demanded the note and the security. If their demand had not been complied with they would have been at liberty to and probably would have instituted suit, recovered judgment, and subjected the property of the debtor to satisfaction of the judgment. Although there does not appear to have been any investigation by the directors at the time the note was given as to whether the alleged indebtedness was correct, other than the reports in respect thereto made by the financial officers of the Securities Corporation, still I think that Development has met the burden cast upon it by the rule above stated, which required them to show the existence of an enforceable indebtedness.

It would serve no useful purpose here, and would unduly lengthen this opinion, to discuss at length the evidence in respect to the indebtedness. I have carefully examined it, and reached the conclusion that the Development Company has established the existence of the indebtedness and that it could have been enforced in an action at law. A part of this indebtedness represents moneys loaned by Development to Securities Corporation directly, and moneys of Development used by Securities Corporation for its own purposes. Moneys were also advanced by Development for and used in connection with a project known as the Refugio-Ore Grande Mines matter, and these moneys were charged on Development's books to Securities Corporation and credited on the latter's books to Development. The circumstances under which these payments were made were, briefly, as follows:

Securities Corporation had entered into a contract with the Refugio Syndicate (which, in turn, had secured, by contract, certain rights from another corporation, known as the Ore Grande Mines Company) to sell certain of the stock of the Ore Grande Mines Company. As a consideration for selling this stock Securities Corporation was to receive a cash commission on the sales, a large amount of common and preferred stock of the Ore Grande Mines Company, and the cancellation of an indebtedness which Securities Corporation owed to the Refugio Syndicate. Securities Corporation guaranteed to sell $800,000 par value of such stock. The moneys collected on the sales of stock, after deducting the cash commissions, were to be remitted by Securities

Corporation to Refugio, which in turn was to apply part of them in liquidation of obligations necessary to secure the title to certain of the properties of the Ore Grande Mines Company and certain other obligations. Securities Corporation did sell a considerable amount of the Ore Grande stock, but did not remit to Refugio all of the moneys collected on such sales which it was obligated to remit. A large part of the moneys necessary to discharge the above-mentioned obligations and to operate the Ore Grande properties, or get them in condition to operate, was advanced by Development and charged to Securities Corporation. These advances were made at the direction of the officers of Securities Corporation, who were also officers of Development.

I think it clear that some part of the indebtedness of Securities Corporation to Development, which went to make up the amount of the note in question, represents moneys advanced by Development in the Ore Grande Mines matter in excess of the moneys which Securities Corporation was under obligation to remit to Refugio; but the amount thereof is not entirely clear, and I think that only a careful audit by an expert accountant could definitely fix it. If I were convinced that Development could not legally recover this excess from Securities Corporation, I think that the note would have to be set aside, because, if substantially all of the indebtedness which it purported to evidence was not legally enforceable, then manifestly the giving of the note was unfair, and in law, under the circumstances of this case, fraudulent. It appears satisfactorily that the greater part of the indebtedness represented by the note arose through loans made directly to Securities Corporation and moneys of Development used by Securities Corporation for its own purposes. As to these moneys there can be no doubt of Securities Corporation's legal obligation to repay them. Nor can there be any doubt of Securities Corporation's obligation to repay any moneys advanced by the Development Company on the Ore Grande project to the extent of the moneys which Securities Corporation was under an obligation to transmit to Refugio, for this would be merely the paying of Securities Corporation's debt at its request. Strictly speaking, any moneys advanced by Development for the Ore Grande project in excess of Securities Corporation's obligation to Refugio were moneys loaned to Securities Corporation.

Viewed in this light, there could be no doubt of Securities Corporation's obligation to Development for them, because the former unquestionably had the power to borrow money. But, in view of the existence of the common officers and directors, I propose to treat such excess as if the moneys were advanced by Development to Ore Grande, and the payment thereof was guaranteed or assumed by Securities Corporation. I do this because, as there were common directors and officers, Development must be charged with notice when the moneys which were being advanced by it for Ore Grande exceeded the obligation of Securities Corporation to Refugio, and that advances in excess thereof were not really loans to Securities Corporation, but rather loans to Ore Grande or Refugio. The question then arises whether, as to such excess, if a suit had been instituted by Development against Securities Corporation to recover it, the latter could have successfully interposed the defense that the guaranteeing or assuming of such loans

to Ore Grande or Refugio was beyond the corporate power of Securities Corporation. During all the time that these advances were being made, Securities Corporation, Refugio, and the Ore Grande Company were practically without funds or convertible assets, but Development was in receipt of a considerable income. The latter derived no benefit from the advances to Ore Grande, but Securities Corporation did. It was of the utmost importance to Securities Corporation that payments, necessary to be made in order to secure title to the properties of the Ore Grande Mines Company, should be made when due, and that other moneys should be expended on behalf of the Ore Grande Mines Company, not only in order to effect the sale of the latter's stock, and thereby earn its (Securities') commission and enable it to fulfill its guaranty, but to make the stock of Ore Grande which Securities Corporation had acquired by virtue of its contract with Refugio, of any value whatever. Neither Refugio nor Ore Grande was in a position to advance these moneys, nor, for that matter, was Securities Corporation. Consequently, all companies being controlled by the same persons, resort was had to the funds of Development. Under these circumstances, it would seem unjust to deprive the stockholders of Development of moneys which were in reality advanced for the benefit of Securities Corporation, and which advancement the domination of Development by Securities had made possible.

[3] But, notwithstanding this, if it be assumed that the guaranty or assumption of these excess advances by Securities Corporation was ultra vires, I think that Securities Corporation could have availed itself of such a defense. In reaching this conclusion, I have not felt at liberty to follow the rule adopted by the courts of New Jersey, to the effect that a corporation is estopped to set up the plea of ultra vires with respect to a transaction for which the corporation has received the consideration, where the status quo ante cannot be restored (Camden & Atlantic R. R. Co. v. Mays Landing R. R. Co., 48 N. J. Law, 530, 7 Atl. 523; Chapman v. Iron Clad Rheostat Co., 62 N. J. Law, 497, 41 Atl. 690; Perkins v. Trinity Realty Co., 69 N. J. Eq. 723, 61 Atl. 167, affirmed 71 N. J. Eq. 304, 71 Atl. 1135; Camden Trust Co. v. Citizens' Cold Storage Co., 69 N. J. Eq. 718, 61 Atl. 529; Whitehead v. American Lamp & Brass Co., 70 N. J. Eq. 581, 62 Atl. 554), although this rule is said to be supported by the weight of authority (Thompson on Corporations, vol. 7, §§ 8321 and 8322). My reason for declining to follow that rule is because it has been disapproved by the Supreme Court of the United States. Central Transportation Co. v. Pullman's Car Co., 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; Union Pacific Ry. Co. v. Chicago, etc., Ry. Co., 163 U. S. 564, 581, 16 Sup. Ct. 1173, 41 L. Ed. 265; McCormick v. Market Bank, 165 U. S. 538, 17 Sup. Ct. 433, 41 L. Ed. 817; California Bank v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198.

The expressions in the opinion of Mr. Justice Brewer in Eastern, etc., Ass'n v. Williamson, 189 U. S. 129, 23 Sup. Ct. 527, 47 L. Ed. 735, are but a concurrence of the Supreme Court in the statement by the state court of the law of that state. The Supreme Court, however, has, while refusing to maintain any action upon an ultra vires

contract, permitted property or money, parted with on the faith of such unlawful contract, to be recovered back, or compensation to be made for it, upon the theory of an implied contract to return or make compensation for property or money which a corporation has obtained, and which it has no right to retain. Central Transportation Co. v. Pullman's Car Co., supra; Pullman's Car Co. v. Central Transportation Co., 171 U. S. 138, 18 Sup. Ct. 808, 43 L. Ed. 108; Aldrich v. Chemical National Bank, 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611; McCormick v. Market Bank, supra; Citizens' National Bank v. Appleton, 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443; Rankin v. Emigh, 218 U. S. 27, 30 Sup. Ct. 672, 54 L. Ed. 915.

But this rule, as I interpret the above-cited cases, is applicable only when the corporation setting up the ultra vires contract has itself received and enjoyed the property or money, and not when it has been received and enjoyed by a third party, although the defendant corporation may have been incidentally benefited thereby. In McCormick v. Market Bank, supra, speaking of this rule, Mr. Justice Gray said that an action could not be supported "to recover anything beyond the value of what the defendant has actually received and enjoyed." In Rankin v. Emigh, supra, recovery was permitted to the extent only of the plaintiffs' property which had been received and appropriated by the bank, of which the defendant was a representative. In the later Pullman Car Case, recovery was limited to the value of property transferred to and used by the corporation setting up ultra vires. The same applies to Aldrich v. Chemical National Bank, supra.

[4] In the case at bar, the excess money was not received and used by Securities Corporation, although it was incidentally benefited by the advancement. Hence there could be no recovery by Development upon the above principle. In order to maintain an action, it would be necessary to resort to the unlawful contract. But I think that the guaranteeing or assumption of these excess advances may be properly considered, in view of the express powers of Securities Corporation, as one of its incidental powers, and hence not ultra vires, under the principle adopted by Vice Chancellor Bergen in Whitehead v. American Lamp & Brass Company, 70 N. J. Eq. 581, 62 Atl. 554, and the Court of Appeals of New York in Holmes v. Willard, 125 N. Y. 75, 25 N. E. 1083, 11 L. R. A. 170. The only business in which Securities Corporation was engaged at the time these advances were made was promoting the Ore Grande project. It was to receive for doing so a very large compensation. Unless the moneys were advanced, the whole project must have been abandoned. This would have entailed a considerable loss to Securities Corporation, not only in rendering practically valueless the large amount of the stock of the Ore Grande Company, which it had received or was to receive by virtue of its contract with Refugio, but also would deprive it of the commissions which it hoped to earn on the sale of Ore Grande's stock. As it was handling all of the money received on the sale of stock, it would have reimbursed itself for all advances made by Development from such moneys. It was benefited proportionately by the advancement of these moneys more than any other concern. I therefore conclude that, if Develop-

ment had instituted suit to recover the indebtedness evidenced by the note, Securities Corporation could not have successfully interposed the defense of ultra vires to that part which represented moneys advanced by Development in excess of Securities Corporation's obligations to Refugio.

In February, succeeding the giving of the note, Development sold the securities pledged for its payment in accordance with the terms of the pledge, and later, having acquired a note given by Securities Corporation to a third party and the securities pledged for its payment, sold the latter. It is sought to set aside these sales. Neither the validity of the latter note nor of the pledge of the securities for its payment is questioned. If the former note and the pledge of securities for its payment were valid, clearly Development had a legal right to sell as it did. But, because of the common directors in both companies, the question arises whether, under the rule above stated, the sale was fair and free from fraud? In determining this question, the fact that the directors owed a duty to Development, as well as Securities Corporation, must not be lost sight of. They owed a duty to Development to realize upon the assets so pledged whenever, in their sound business judgment, the same was necessary to properly protect it. As directors of Securities Corporation, they owed it a duty to protect it in so far as they could; but they did not owe it any greater duty than if they had constituted an independent board of directors of Securities Corporation. The query at once arises, therefore: What could an independent board of directors have done? The indebtedness having been established, as well as the clear legal right of Development to collect the same, an independent board of directors of Securities Corporation could have done nothing more than attempt to raise money to pay the indebtedness or secure an extension. The conclusion that they could not have raised money, when the then existing state of the market as respects the stock such as Securities Corporation owned is considered, is quite inevitable. Securities Corporation owed other moneys than those due to Development, and for a period of several months a stockholders' committee endeavored to secure a loan from Development to pay the other indebtedness, as well as to secure an extension, for the payment of the debt due Development. In this they were unsuccessful.

In my judgment, it is not sufficient proof of bad faith or unfair dealing on the part of these directors to show that they, as directors of Development, had power to extend the time for the payment of the indebtedness and to postpone the sale of the assets of Securities Corporation, and that they did not do so, because I think that in this respect they owed no greater duty to Securities Corporation than if they had had no connection with it. Although there is some evidence that the assets which were sold had a potential value greatly in excess of the amount of the indebtedness, still it is quite clear that these assets brought at the sale all that they could be reasonably expected to bring in the then existing market. They were sold with full notice to the stockholders' committee of Securities Corporation, in accordance with the terms of the pledge and in the way in which stocks and bonds pledged as collateral security for indebtedness are commonly and usu-

ally sold. I cannot find in this transaction any fraudulent or unfair dealing. The most that can be said regarding it is that Development was not as lenient as it might have been.

The views here expressed regarding the note and the giving of the collateral apply equally to the assignment to Development of the indebtedness due from the Refugio Syndicate to Securities Corporation. This conclusion makes it unnecessary to consider whether the plaintiff has made sufficient efforts to secure action on the part of the corporation, in whose right he sues, to entitle him to bring this action in a representative capacity.

It follows that the bill must be dismissed.