BAUM *v.* NORD ET AL.

[No. 13,045.   Filed December 21, 1928.   Rehearing denied March 8, 1929.]

*Aiken, Grant & Aiken* and *S. K. Frankenstein,* for appellant.

*Eggeman, Reed & Cleland* and *James P. Murphy,* for appellees.

NICHOLS, C. J.—Action by appellant against appellees for the balance due on a note executed to the Welfare Loan Society of Fort Wayne, Indiana, and, by the receiver of such society, transferred and assigned to appellant, after maturity, by indorsement in writing, and,

as appellee contends, after it had been paid and canceled in accordance with an agreement made at the time of its execution. This note was for $2,500, with interest and attorney fees. To secure the payment of this note, appellee deposited with the payee, as collateral security, certificates of stock for twenty-two shares of preferred stock in the Welfare Loan Society of Richmond, and ten shares of preferred stock in the Welfare Loan Society of Fort Wayne, and four shares of common stock in the Welfare Loan Society of Fort Wayne. This stock was sold at public sale, after notice had been given, and suit was brought by appellant to recover the balance due.

It is averred in the complaint that on April 10, 1922, appellees, by their promissory note of that date, promised and agreed to pay to the Welfare Loan Society of Fort Wayne $2,500, one year after date, a copy of which note is attached to and made a part of the complaint; that the Welfare Loan Society of Fort Wayne duly assigned and transferred said note, together with the securities described therein, to appellant by indorsement in writing; that appellant, in accordance with the provision of said note, offered the said securities described therein for public sale, and received therefor $532.02; that the balance of said note, with attorney fees, is due and unpaid.

It is provided in the note that, "I have deposited with the WELFARE LOAN SOCIETY OF Fort Wayne, Indiana, as collateral security, for payment of the above note or any other liabilities of Wm. Nord & Flora Nord to said society, due or to become due, or that may hereafter be contracted, the following property, viz.: 22 shares Welfare Loan Society of Richmond, Indiana, preferred stock, $50.00 per share, Certif. No. 110; 10 shares Welfare Loan Society of Fort Wayne Preferred Stock, Certif. No. 258; 4 shares Welfare Loan Society of Fort Wayne Common Stock, Certif. No. 186.

"The market value of which is now $————, with the right to call additional security should the same decline, and on failure to respond, this obligation shall be deemed to be due and payable on demand, with full power and authority to sell and assign and deliver the whole of said property or any part thereof, or any substitutes therefor, or any additions thereto, at any broker's board, or at public or private sale, at the option of said society, or its assigns, and with the right to be purchasers themselves at such broker's board, or at public sale, on the non-performance of this promise, or the non-payment of any of the liabilities above mentioned, or at any time or time thereafter, without advertisement or notice. And after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sales so to be made to pay any, either or all other said liabilities, as said society or its president or manager, shall deem proper, returning the overplus to the undersigned."

Appellees answered in five paragraphs, the first being a denial; the second, payment; the third, that before the commencement of this action, to wit, on December 10, 1924, and long before appellees had any notice or knowledge of any assignment or transfer of the note sued upon, appellees paid to the payee named in said note the full amount due thereon, and said payee received and accepted from them the amount due thereon in full satisfaction thereof; the fourth, that appellees admit the execution of the note sued on and delivery of the same to the payee therein named, but aver that said note was not assigned to appellant until long after its maturity, that appellant secured said note without the payment of any consideration whatever, and that, after the maturity of said note, and long before appellant secured the same, and long before appellees had any notice or

knowledge of any assignment or transfer thereof, appellee had a full and complete settlement with the payee therein named, and, upon said settlement, paid to said payee a valuable consideration, and said payee at said time received and accepted from appellees said consideration in full satisfaction and payment of said note; and the fifth paragraph, that, at the time of the execution and delivery of said note, appellees deposited with said payee, as collateral security for payment thereof, the preferred and common capital corporate stock set forth in said note, and that, on the —— day of December, 1923, and long after said note became due and payable according to its terms, the said society, payee, through and by its proper officers and agents, agreed with appellees to accept said shares of preferred and common capital stock in full payment of the indebtedness herein sued on, and, in accordance with said agreement and understanding, appellees delivered to, and said payee accepted, said capital corporate stock in full payment and discharge of said indebtedness, and said payee therein named agreed in consideration thereof to cancel said note and indebtedness.

To these affirmative paragraphs of answer, appellant replied in denial and by an affirmative paragraph to the fifth paragraph of answer that, continuously from May 17, 1921, to and including the month of December, 1923, appellees were stockholders in said Welfare Loan Society; that during all of the year 1923, said society was insolvent and did not have, own or possess sufficient assets with which to pay its indebtedness, which facts appellees well knew, and that said society did not enter into any written contract of satisfaction or cancellation of the note sued upon in this action, or for the release or cancellation of the shares of stock so held as collateral security for the payment of said note, and it did not au-

thorize any officer or agent to make any verbal contract for any such cancellation or satisfaction of said note or the stock so held as collateral security therewith, nor was there any consideration for any such contract alleged in said paragraph of answer.

These issues were submitted to a jury for trial and a verdict returned for appellees.

Appellant filed a motion for a new trial, assigning fifty-one reasons therefor. The court overruled such motion and judgment was rendered on the verdict, from which this appeal.

The error relied upon for reversal is the action of the court in overruling appellant's motion for a new trial, under which appellant presents first the insufficiency of the evidence to sustain the verdict of the jury.

It appears by the evidence that appellees borrowed $2,500 from the Fort Wayne Welfare Society, the loan being consummated by appellee William Nord through Morton Hawkins, president of the Society, and Mr. Scheiv, its secretary. Nord went to Portland, Indiana, where there was a branch office of such society, and there it was agreed that appellees should deposit as collateral the stock mentioned in the sum of $2,500, and that, when the note became due, in the event appellees could not or preferred not to pay the note, such society would accept the stock in payment of said note, and cancel the same and return it to appellees. This evidence is challenged by appellant and the right of the president of said society to make such an agreement is also challenged. As to the first challenge, we only need to say that this court does not weigh the evidence. Hereinafter, we will consider the question of the right of the president of such society to make such an agreement. The note was executed, the loan was made, and appellees deposited the required amount of collateral duly assigned to the payee. Sometime after the ma-

turity of the note, Hawkins, president of the society, Scheiv, its secretary, and a Mr. Wagner, a director of such company, called at the home of appellee Nord and solicited him to join in the execution of a bond for $80,000, which Nord declined to do. At that time, appellee Nord asked Hawkins concerning his note and requested him and Scheiv to accept the stock in payment thereof. It further appears by the evidence that Hawkins and Scheiv recalled the arrangement, and, after conferring among themselves, stated that they would accept the stock in payment and cancel the note, and Hawkins then instructed Scheiv to direct the Fort Wayne manager to cancel the note and return it to appellee Nord, and that Scheiv promised to so do. This evidence is challenged by appellant, as well as the authority of Hawkins to consummate such an arrangement for the payment and the cancellation of the note. Appellee Nord thereafter made inquiry concerning his note, but appellees learned nothing further about it until it came into possession of appellant, at a time after the Fort Wayne Welfare Society passed into the hands of a receiver and the accounts of such society had been sold to appellant. Included in these accounts was the note in suit.

Appellant contends that the note could be discharged only by the payment of money, and that the president and secretary of the society could not make an agreement respecting the payment except that it be paid in money. It is to be observed that the note came into the hands of appellant long after its maturity, and that therefore appellant did not hold it in due course, and that it was subject to all defenses in his hands that appellees might have made against it in the hands of the payee thereof.

Appellant contends that the officers of a corporation, acting as such, have no authority to accept the capital

stock of the corporation in payment and discharge of a note payable to the corporation, and cites to sustain his contention, with other cases, *Noblesville Gas, etc., Co.* v. *Loehr* (1890), 124 Ind. 79, 24 N. E. 579; *Vlick* v. *Jordan* (1920), 74 Ind. App. 314, 129 N. E. 42; *Louisville, etc., R. Co.* v. *McVay* (1884), 98 Ind. 391, 49 Am. Rep. 770.

The first two of these cases go only to the question of the authority of a single member of the board of directors to act without the concurrence and direction of the full board of directors, and the last to the authority of an officer to act without such authority of the board. These cases are not in point under the facts in this case.

It is expressly provided by Art. 4 of the by-laws of the welfare society that "the president shall preside at all meetings, shall have general supervision of the affairs of the society, . . . and perform all such other duties as are incident to this office or are properly required of him by the board of directors." As, by the by-laws of such society, it thus appears that the president had general supervision of the society, it is clear that, when negotiating the loan and determining as to the method of its payment, he must have been acting within the apparent scope of his authority. It is true, as a general proposition, that the president of a corporation, as such, has very little authority or power to act for the corporation, and that he cannot bind it in material matters, except as he may be authorized by law or by the by-law of his corporation. But, when the president acts within the apparent scope of his authority and within the scope of the usual duties which he performs, it will be presumed that he acted with authority, and anyone who would contend to the contrary has the burden of proof that he did not so act. *Cushman* v. *Cloverland Coal, etc., Co.* (1908), 170 Ind. 402, 405, 84 N. E. 759, 16 L. R. A. (N. S.) 1078, 127 Am. St. 391; *National State Bank* v. *Vigo County National Bank*

(1895), 141 Ind. 352, 355, 40 N. E. 799, 50 Am. St. 330; *Evansville, etc., Co.* v. *Bank of Commerce* (1896), 144 Ind. 34, 37, 42 N. E. 1097.

This burden appellant failed to discharge, and the jury by its general verdict found that Hawkins was acting with authority when he made the agreement as to the manner in which the note might be paid at the time of its execution, and thereafter directed its execution. But appellant contends that the welfare society could not, in any event—regardless of whether its president, acting within the scope of his apparent authority, could bind the company—accept its capital stock in payment of a debt due the company, citing, to sustain his contention, *Maryland Trust Company* v. *National Mechanics' Bank* (1906), 102 Md. 608, 63 Atl. 70; *Mutual Loan Society* v. *Letson* (1919), 202 Ala. 683, 81 So. 659; and *Steel* v. *Farmers & Merchants, etc., Assn.* (1915), 95 Kans. 580, 148 Pac. 661, along with numerous other cases. These authorities seem to sustain appellant's contention, and had only stock of the Welfare Loan Society been pledged as collateral, and eventually accepted in payment of the note, we would feel constrained to follow the principles in those cases announced. But, there were but four shares of the common stock of the Welfare Loan Society, and ten shares of the preferred stock of said society, while there were twenty-two shares of the stock of another company or society, and these shares of another company were sufficient consideration for a valid agreement for the surrender of the note, aside from the stock of the Welfare Loan Society, conceding that such stock could not have been accepted as payment of the note. It has been held by the Supreme Court of this state and by this court that, generally, payment can be made in anything that the creditor will accept as payment. *Ward* v. *Walton* (1853), 4 Ind. 75; *Louden* v. *Birt* (1853), 4 Ind. 566; *Johnston* v. *Niemeyer* (1858),

10 Ind. 350; *Certain* v. *Smith* (1913), 53 Ind. App. 163, 101 N. E. 319.

Appellant argues that the conversation purporting to constitute the parol agreement for the surrender of the stock in payment of the note should not have been heard. In *Ward* v. *Walton, supra,* the court, speaking with reference to a note in suit, said that, "the note was a contract, not under seal, and it was, no doubt, competent for the parties before breach to enter into a verbal contract providing for its discharge, by the delivery of property, or in any other mode agreed on between them." In *Certain* v. *Smith, supra,* it is stated that, "the law is also well settled that the payee of a promissory note may agree with the maker for a means or method of discharging the obligation in a manner different from that set out in the note, and this agreement may be made at the time of the execution and delivery of the note, or thereafter, while it remains the property of the original payee, and when such an agreement made between the parties is shown to have been duly executed, it presents a good defense to an action on the note while it is in the hands of the parties, or their assignees with notice." Thus it appears that not only might the parties by verbal agreement contract as to the manner of payment, and kind of property in which payment should be made, but that such an agreement might be made at the time of the execution of the note, or subsequently thereto and, when executed by the parties or their assigns with notice, it would be binding. The fifth paragraph of answer avers that in December, 1923, and long after the maturity of the note, the payee, through its officers, agreed to accept the stock in payment of the note, while the evidence shows that such agreement was originally made at the time of the execution of the note, and that it was reaffirmed and concurred in, in December, 1923, and after the maturity of the note.

We may as well also say that it was fully executed after its maturity, for there is evidence that the president of the association directed its secretary to deliver the note to appellees, and that the association thereafter exercised acts of ownership over the stock. It does not appear that appellant was harmed by the variance between the answer and the proof, and the answer will be deemed amended to correspond to the proof.

As the agreement as to the method of discharging the note was originally made at the time of its execution, and long prior to December, 1923, we do not see that the matter of the insolvency of the association, in the latter part of the year 1923, would in any way affect the transaction, and evidence concerning such insolvency was properly excluded.

Appellant undertakes to present error as to certain instructions, but the instructions are not in the record. There is no bill of exceptions containing the instructions. Appellant has undertaken to bring them into the record under the provisions of §§585 and 586 Burns 1926, but has failed to comply with the provisions of these sections of the statute. These sections have been so often construed by this court and the Supreme Court, that we deem it unnecessary again to construe them.

The questions involved in this appeal are presented in so many different forms, and from so many different angles, that we have found it somewhat difficult to follow them, but, after a careful consideration of the entire record, we conclude that appellant has had a fair trial, and that a right result has been reached. There was no reversible error in overruling appellant's motion for a new trial.

Judgment affirmed.