JOSEPH BAUMGARTNER v. CITY OF MANKATO and Another.[1]

February 6, 1895.

No. 9024.

### Street Railways—Franchise—Repair of Streets.

The city of Mankato, having authority so to do, granted to a street-railway company the right to lay its tracks and operate its railway in the streets of said city. The ordinance granting this right provides that the tracks of said railway shall not be raised above the surface of the street, and the rails shall be so laid and maintained that carriages and vehicles of every kind can easily and freely cross said track at any and all points thereof with the least possible obstruction. The ordinance also provides that the railway company "shall repair any and all injury done to the streets, sidewalks, curbs, or gutters by the construction or repairing of the tracks along the streets, and to protect and save harmless the city of Mankato against any and all claims for damages arising from or caused by the construction or management of the tracks or roads herein provided for." The railway company accepted this ordinance with all its provisions and conditions, and expressly made the ordinance a contract between the parties, and thereupon it constructed its track along the center line of Front street, in said city. On August 31, 1893, and for a period of several weeks prior to that date, the surface of the ground along the outer side of and adjoining the rails of said street-railway in Front street, in said city, had been worn away by public travel therein, so that in places the surface of the street outside of and next to such rails was from one to three inches below the upper surface of said rails. *Held*, that the railway company having received the benefits and advantages of the corporate franchise from the city under the provisions of the ordinance, it was its contract duty so to lay and maintain its rails that carriages could easily and freely cross its track, and this includes the duty of filling up outside its rails (when the earth becomes worn or washed away) so as to make safe connection between the tracks and the balance of the street, and that this is a continuing duty, under the terms of the ordinance.

### Same.

*Held*, further, that the railway company in making such repairs and for such purpose cannot be deemed a trespasser, especially where such repairs are made in a reasonable, prudent, and safe manner, for the convenience and safety of the traveling public, and so as not to unnecessarily interfere with the use of the street.

[1] Reported in 62 N. W. 127.

Negligence of Company—Question for the Jury.

> On August 31, 1893, plaintiff, with a team of horses and wagon and load of hay upon which he was riding, attempted to and did drive across defendant's track, and in so doing, because of the rails of the track being above the surface of said street, outside the rails, not to exceed three inches, the wheels of his wagon caught upon the outer side of one of the rails of defendant's street-railway track, and slid along the same for some distance, turning plaintiff's wagon nearly at right angles with the street, and because thereof plaintiff's wagon became unbalanced and tipped over, throwing plaintiff upon the whippletrees, behind his horses, and in front of his wagon. Plaintiff's horses, being thus frightened, ran away, and he was thereby seriously injured. *Held*, that the question of defendant's negligence was properly submitted to the jury.

Action against the city of Mankato and the Mankato Street-Railway Company to recover for injuries occasioned by the negligent construction and maintenance of the railway track of the defendant company. By section 3 of the ordinance cited, "no part of the track shall be operated until the same shall have been inspected and approved by the city engineer." By section 4, the company, when required by the common council, was to place one plank, of a specified width, along each side of the rails, the entire length. At the trial it was established by evidence that, at the time of the completion of the railway, it was duly approved by the engineer of the city, and that the defendant company had never laid planks on the outside of its rails, and had never been requested so to do. The court instructed the jury that defendant was in duty bound to do on both sides of the rails of its track what would be reasonably necessary, in the exercise of ordinary care, to prevent the rails from being a dangerous obstruction in the street to those lawfully traveling there in the exercise of ordinary care; that the plaintiff was entitled to recover, if the jury found, from a fair preponderance of the evidence, that the defendant company maintained the rail on the east side of its track so high above the surface of the street that it constituted a dangerous obstruction to travelers in the exercise of ordinary care; that the company was not a trespasser upon the street, and would not be liable for any injury resulting to a traveler thereon, unless such injury happened through its negligence. To these instructions defendant excepted. The court refused a request of the company to charge that the company was not under any obliga-

tion to plaintiff to keep in repair any portion of the street outside of the rails; that if the track was originally constructed in accordance with the ordinance, and as required by the city, was laid upon the established grade of the street, and was maintained at or below such established grade, the company was guilty of no negligence; that if the rails were maintained at or below the established grade, and if the defective condition was caused solely by the wearing away of the surface of the street outside of the track by the general public traveling thereon, thus only causing the track to protrude above the surface of the street, there was no fault of the company, and to find for the company.

The jury found specially that at the place where the accident happened the rails were not elevated above the established grade of the street; that the difference between the level of the track and the surface of the ground was wholly caused by the wearing away of the street,—and returned a verdict for the plaintiff. From an order of the district court for Blue Earth county, Severance, J., refusing to set aside the verdict and to grant a new trial, the defendant company appealed. Affirmed.

*Pfau & Young* and *Lorin Cray,* for appellant.

The car company owed no duty to keep the street in repair, except so far as provided by the ordinance. McMann v. Second Ave. Ry. Co., 75 N. Y. 231; City of Brooklyn v. Brooklyn City R. Co., 47 N. Y. 475; Lowery v. Brooklyn City & N. R. Co., 76 N. Y. 28. In California a company required to keep in repair "the space between the rails" is not required to keep in repair the street between the double tracks. Robbins v. Omnibus R. R. Co., 32 Cal. 472. Where a railway is constructed upon the grade of a street, it depends upon the ordinance whether the company can be required to change the level of its track in case the grade of the street is changed. Ashland St. Ry. Co. v. City of Ashland, 78 Wis. 271, 47 N. W. 619. It would seem that the company has no duty with respect to the condition of the street, other than the condition of its own rails. See Schild v. Central Park R. R. Co., 133 N. Y. 446, 31 N. E. 327; McKillop v. Duluth St. Ry. Co., 53 Minn. 532, 55 N. W. 739.; City of St. Joseph v. Union Ry. Co., 116 Mo. 636, 22 S. W. 794. This railway being in the street by authority of the city, being constructed

properly and as required by the ordinance, and having been maintained as constructed, the defendant never having been required to keep in repair the street outside of its rails, and never having undertaken to do so, and the unevenness being the result of the wearing down of the street outside its tracks, the duty devolved on the city, and not the company, to repair.

*Thos. Hughes* and *E. P. Freeman*, for respondent, cited Landrue v. Lund, 38 Minn. 538, 38 N. W. 699; City of Minneapolis v. St. Paul, M. & M. Ry. Co., 31 Minn. 129, 35 N. W. 3; Fash v. Third Ave. R. R. Co., 1 Daly, 148; Houston City St. Ry. Co. v. Delesdernier, 84 Tex. 82, 19 S. W. 366; 23 Am. & E. Enc. L. 978; Johnson v. St. Paul & D. R. Co., 31 Minn. 283, 17 N. W. 622; Fitts v. Cream City R. Co., 59 Wis. 323, 12 N. W. 186; Bowen v. Detroit City Ry. Co., 54 Mich. 496, 20 N. W. 559.

BUCK, J. This action was brought against both defendants above named to recover for personal injuries sustained by the plaintiff, resulting from an accident upon a street of the defendant city, along which the defendant railway company was operating a street-railway under an ordinance of the city. Plaintiff dismissed the action as to the defendant city, upon the ground, as stated in the argument, that plaintiff had failed to give the city notice within the time required by law to hold it responsible for the alleged damage. At the trial a verdict was rendered against the defendant railway company for the sum of $500, and from an order refusing a new trial the defendant appeals, and the case comes before us upon a bill of exceptions.

The authority of the railway company to lay its tracks and operate its railway in the streets of the city of Mankato is derived from an ordinance passed by the city, and approved December 14, 1885. The railway company accepted the conditions of the ordinance, and had operated its railway for a period of several years prior to the time of the injury complained of by the plaintiff. It appears that such railway company constructed the track in question along the center line of Front street, in said city, upon the established grade thereof, and when first constructed it was in some places above the actual surface of the street, but thereafter the street was, by the proper

authorities of said city, filled for the entire length of the street-railway track with dirt and gravel and macadamized up to the level of the surface of the rails of said street-railway. Between the rails of the track of said street-railway such work was done by the railway company. It had never raised the tracks above the established grade of the street, and it had never assumed or undertaken to repair or keep in repair any portion of the street outside of the rails of said street-railway, and had never been requested so to do, except as provided in the said ordinance.

On August 31, 1893, and for a period of several weeks prior to that date, the surface of the ground along Front street, between Hickory and Walnut streets, in said city, had been worn away by public travel thereon, and along the outer side of the rails of said street-railway, so that in places the surface of the street outside of such rails was from one to three inches below the upper surface of said rails. On August 31, 1893, the plaintiff, with a team of horses and wagon and load of hay, upon which he was riding, attempted to and did drive across the street-railway between Hickory and Walnut streets, and in driving across the street-railway, because the rails of said street-railway were above the then surface of said street outside thereof not to exceed three inches, the wheels of plaintiff's wagon caught upon the outer side of the most easterly rail of said street-railway, and slid along the same for some distance, turning plaintiff's wagon nearly at right angles with Front street, and because thereof plaintiff's wagon became unbalanced, and tipped over, throwing plaintiff upon the whippletrees behind his horses, and in front of his wagon, and plaintiff's horses ran away, and he was seriously injured.

Section 3 of the ordinance provides that: "The track of said railway shall not be raised above the surface of the street, and the same is to be laid with rails approved by the common council, and the same shall be so laid and maintained that carriages and vehicles of every kind can easily and freely cross said track at any and all points thereof with the least obstruction possible." Various other provisions of the ordinance require the railway company to keep the tracks clear and in good condition, to remove snow from the tracks, and spread the same so that the street may not be obstructed thereby, and so that the same may not be a hindrance to vehicles in cross-

ing the tracks or in passing along the street.    Section 4 of the ordinance also provides that the railway company shall "repair any and all injury done to the streets, sidewalks, curbs or gutters by the construction or repairing of the tracks along the streets as herein provided for, and to protect and save harmless the city of Mankato against any and all claims for damages arising from or caused by the construction or management of the tracks or roads herein provided for."    Section 13 of the ordinance provides that its acceptance by the railway company, with the provisions, conditions, regulations, and limitations therein expressed, shall become and be deemed a contract between the parties.

There is no question raised but that the railway company accepted the provisions of the ordinance, and operated its railway thereunder.    It was therefore the duty of the railway company to see that these conditions were performed.    The benefit and advantage it received from the city in obtaining a corporate franchise carried with it a concurrent obligation so to construct and maintain its tracks as not to endanger the public travel.    Irrespective of the question of the obligation of a street-railway company so to construct and maintain its track in a public street in such a condition as not materially to impede or obstruct public travel when there is no express contract obligation, yet its duty and obligation seem quite clear in this case under its acceptance of the conditions of the ordinance, and this duty must have been well understood by both the company and the city authorities.    Whenever the surface of the street sank below the top of the rails, it was the duty of the railway company to restore it to a safe condition for the passage of vehicles of every kind.    This was a continuing duty under the conditions of the ordinance.    We do not, however, hold that it was the primary duty of the railway company to keep in repair the street outside of its tracks, except that it is required to lay and maintain its rails so that carriages can easily and freely cross its track, and this includes the duty of filling up outside its rails (when the earth becomes worn or washed away), so as to make safe connection between its tracks and the balance of the street.

Whatever might be the duty of the city in this respect as to the public generally, it was under no obligation to make these repairs, as between itself and the railway company.    If the city was com-

pelled to make such repairs, it would impose an additional expense and burden upon the taxpayers, never contemplated by the parties, and totally unwarranted by the terms of the ordinance. The claim of the railway company that it would be a trespasser if it undertook to make repairs in the street outside of and adjoining the tracks, is not justified by the facts or the law. There is no question but that it had a right to put down its rails upon the street, and maintain them there. It was not a trespasser in so doing, and if it laid its tracks and maintained them without any act of negligence upon its part, it would not, in such case, be liable for accidents resulting from its tracks being in a public street. But a municipal corporation is a trustee for the general public in regard to the use of its streets, and it can keep them in safe repair itself; or when, as in this case, it grants to a private corporation the right to use a part of the street, it may attach to such grant a condition that the portion of the street adjacent or contiguous to the tracks shall continually be kept and maintained by the private corporation accepting such grant and enjoying its advantages and benefits, so that carriages can easily and freely cross its tracks. In repairing that portion of the street outside of and adjacent to the rails in a reasonable and prudent manner, so as to make the crossing of them convenient and safe for the public travel in the manner above indicated, would be not only the performance of a contract duty, but one which it had by the very terms of the contract a license and a right to do. Certainly, in such case, the railway company could not be deemed guilty of a trespass because it performed a public duty arising out of a license and contract agreement with a municipal corporation, where it had the authority to make the contract and grant the license. The proper test in such case would be whether the repairs were necessary, and, if so, whether the company were making them in a reasonable, prudent, and safe manner for the convenience and safety of the traveling public, and so as not unnecessarily to interfere with the use of the street.

Whether the condition of the track was such, at the time of the injury complained of, as to constitute neglect of duty on the part of the railway company, whereby injury resulted to the plaintiff, was a question of fact for the jury. The defendant was rightfully in the street, but being there, it was the province of the jury to de-

termine whether its act in allowing the rails to remain in the condition they were, viz. from one to three inches above the surface of the street, was not such an act of negligence as to the rights of the traveling public as to render it liable for the injury to plaintiff. We have examined the various authorities cited by the respective counsel, but we need not discuss them, because we base our decision upon the facts in this case, and hold that under the contract obligations between the parties arising out of the city ordinance it was the duty of the railway company continually to maintain and keep its tracks in such condition that carriages and vehicles of every kind could easily and freely cross such tracks at any and all points thereof with the least obstruction possible. Upon the questions and facts involved the court correctly instructed the jury, and there are no errors in the case.

In view of the frequent presentation to this court of voluminous and cumbersome records, a large portion of which are entirely unnecessary, entailing upon this court the laborious duty of examining the same, we commend to the profession the concise, brief, and comprehensive, but sufficient, paper book in this case as a model and example which might be followed in most cases with great benefit to the court and counsel.

The order of the court below denying the motion for a new trial is affirmed.