City of Vincennes *v.* Vincennes Traction Co.—187 Ind. 498.

---

CITY OF VINCENNES *v.* VINCENNES TRACTION COMPANY.

[No. 23,241. Filed June 27, 1918.]

1. STREET RAILROADS.—*Use of Streets.—Franchise.*—Where an ordinance giving the right to a street railroad company to maintain a single or a double track was passed under the general powers conferred upon municipalities, it became in its nature, upon acceptance by the company, a contract right, binding alike upon the state, the municipality and the utility. p. 501.

2. MUNICIPAL CORPORATIONS. — *Permit to Use Streets. — State Control.*—Under §§5, 12, Acts 1891 p. 109 (§§5454, 5464 Burns 1894) and §1, Acts 1891 p. 122 (§3623 Burns 1894), a permit or franchise giving a street railroad company the right to use the streets of a city must be regarded as coming from the state. p. 502.

3. MUNICIPAL CORPORATIONS.—*Control of Streets.*—The streets
of a city are public highways belonging to the state and, in
the absence of constitutional limitations, may be directly con-
trolled by the state. p. 503.

4. MUNICIPAL CORPORATIONS.—*Use of Streets by Utilities.*—State
*Regulation.* — Although a city, under certain governmental
powers delegated to it, has the right to regulate the use of its
streets in the interest of all the users thereof, such power will
not be extended to include matters not properly within the sub-
ject of regulation. p. 503.

5. STREET RAILROADS.—*Regulation.*—*Power of City to Enjoin
Removal of Tracks.*—Where a city, under the powers delegated
by §§5, 12, Acts 1891 p. 109 (§§5454, 5464 Burns 1894) and §1,
Acts 1891 p. 122 (§3623 Burns 1894), passed an ordinance
giving a street railroad company the right to construct, oper-
ate and maintain single or double tracks, which ordinance con-
sidered as a whole plainly indicated an intention that the needs
of traffic should determine the necessity for double tracks, an
action to enjoin the company's successor from replacing double
tracks with a single track was improperly brought, since the
question involved was one of reasonable service, and, under
§110 of the Public Service Commission Act (Acts 1913 p. 167,
§10052a Burns 1914), should have been first submitted to the
commission. p. 503.

From Clay Circuit Court; *John M. Rawley,* Judge.

Suit by the city of Vincennes against the Vincennes
Traction Company. From a judgment sustaining a de-
murrer to the complaint, the plaintiff appeals. *Af-
firmed.*

*William H. Hill* and *Charles E. Henderson,* for appel-
lant.

*James Wade Emison, Wade & Padgett, William S.
Hoover* and *Ewing R. Emison,* for appellees.

MYERS, C. J.—Appellant brought this suit against ap-
pellee to enjoin the latter from replacing its double track
of street railroad now maintained by it on Seventh
street, in the city of Vincennes, with a single track.
The complaint, in one paragraph, was tested by a de-
murrer on the grounds:   (1) That the court had no
jurisdiction of the subject-matter; and (2) for want

of facts. This demurrer was sustained and judgment thereon followed. That ruling is assigned as error.

From the complaint we learn that in October, 1881, the city of Vincennes, by ordinance, granted to appellees' remote assignors, their successors and assigns, for the term of fifty years the right to construct, maintain and operate a single-track street railroad over its streets. Thereafter, in July, 1891, appellee's predecessor, by an ordinance amending the original, was given the right, for the balance of the fifty-year term, to construct, operate and maintain an overhead or some other improved system for the propulsion of its cars. At first the company established, constructed and operated a single track, and later a double track on Seventh street and was maintaining and operating double tracks at the time appellee took over the plant. Since that time appellee has operated, and now is operating, double tracks on Seventh street, but will, unless enjoined, and without the consent of appellant, immediately remove one track and continue to maintain and operate a single track only, which is inadequate to furnish reasonable service to the public and residents of appellant residing on and tributary to this particular street line, in violation of its contract, for the redress of which appellant has no legal remedy as practical, complete and efficient as that afforded in equity.

Appellant's contention is grounded upon §3 of the ordinance of 1891, which reads as follows:

"Section 3. Be it further ordained that the right and privilege is hereby granted to the said Vincennes Citizens Street Railway Company to construct, operate and maintain single or double tracks, with all convenient turnouts and sidings, under this ordinance for the unexpired term of the above named ordinance, namely forty (40) years from the 24th day of October, 1891, upon condition that said street cars be propelled by electricity ex-

clusively, or some other approved mode of propulsion, other than animal power, on or before July 1, 1892; otherwise this ordinance to be null and void."

This ordinance was passed pursuant to general powers conferred upon municipalities by the legislature and, on its acceptance by appellee's grantor, it became 1. in its nature a contract right, alike binding upon the state, municipality and the utility. *Williams* v. *Citizens' R. Co.* (1891), 130 Ind. 71, 73, 29 N. E. 408, 15 L. R. A. 64, 30 Am. St. 201; *Grand Trunk, etc., R. Co.* v. *City of South Bend* (1912), 227 U. S. 544, 556, 33 Sup. Ct. 303, 57 L. Ed. 633, 44 L. R. A. (N. S.) 405; *Chouquette* v. *Southern Electric R. Co.* (1899), 152 Mo. 257, 53 S. W. 897; *Baumgartner* v. *City of Mankato* (1895), 60 Minn. 244, 62 N. W. 127.

Appellant takes the position that, when appellee or its predecessors affirmed its option to construct and operate double tracks, it became bound thereby to continue their operation unless the city consented to their discontinuance.

The general assembly of this state, in 1861, at a special session, enacted a law for the incorporation of street railway companies. Acts 1861 p. 75, §4143 *et seq.* R. S. 1881. Section 5 of that act, authorizing the use of streets by such companies was amended in 1891, Acts 1891 p. 109, §5454 Burns 1894, and was in force June 3 of that year. This section, as amended, provided that: "Such company may construct its track, switches, side-tracks or turn-outs upon the streets of said cities or towns under the following conditions and restrictions." Then follows a direction as to the part of the street to be occupied and other provisions for the construction of such road with reference to the street grade, etc. Section 12 of the act, *supra* (§5464 Burns 1894), and in force at the time this ordinance was passed, provided that: "Nothing in this act contained shall be so con-

strued as to take away from the common councils of incorporated cities the exclusive powers now exercised over the streets, highways, alleys and bridges within the corporate limits of such cities; and all street railroad companies which may be organized under the provisions of this act shall first obtain the consent of such common council to the location, survey and construction of any street railroad through or across the public streets of any city before the construction of the same shall be commenced."

There was also in force §1, Acts 1891 p. 122 (§3623 Burns 1894), amending §61 of the law of 1867, giving to the common council of cities the exclusive power over streets for certain purposes, but no mention is made therein with reference to its authority concerning street railroads. It will be observed from an examination of these enactments that the state not only created street railway companies as a means of travel germane to street uses, but gave them the right to occupy the streets of cities with their tracks upon first obtaining the consent of the common council. The common council of the city of Vincennes consented to the use of its streets for street railway purposes. By such consent the condition precedent to the use of the streets by the company was performed, consequently we must regard the permit or franchise given to the company to use the streets as coming from the state. *Grand Trunk, etc., R. Co.* v. *City of South Bend, supra.* But the responsibility of making the contract was delegated to the city. An inspection of this instrument will disclose many stipulations, regulatory in character and having to do with the manner of laying tracks with reference to street grades, the keeping of the tracks in repair, the running of its cars, etc.; yet there is no provision requiring the company to maintain and not abandon a double-track system in case of such installa-

City of Vincennes *v.* Vincennes Traction Co.—187 Ind. 498.

tion. Considering the contract as a whole, it plainly indicates the intention of the parties to let traffic determine the necessity for double tracks, thereby involving the question of reasonable service.

The 'streets of Vincennes, laid out under legislative enactments, are public highways belonging to the state and, in the absence of constitutional limitations, 3. may be directly controlled by the state. 1 Elliott, Roads and Streets (3d ed.) §509; *State, ex rel.* v. *Board, etc.* (1908), 170 Ind. 595, 608, 85 N. E. 513.

However, the legislature has delegated to municipalities certain governmental powers over streets; but when, as here, a controversy arises between the 4. city and the utility as to the manner or extent to which the street may be used by the latter, the former, in the interest of all users, has the power of regulation, but this power will not be extended to include matters not properly within that subject.

In 1913, in view of existing conditions generally over the state regarding municipal authority concerning the various utilities then operating, the legislature 5. deemed it wise to establish a more uniform system for the regulation of utilities, and thereupon created the Public Service Commission of Indiana, and conferred upon it all the powers of control heretofore enjoyed by the municipalities save and except such control as is reserved to municipalities over streets by §110. Acts 1913 p. 167, §10052a *et seq.* Burns 1914. But under this section of the act provision is made whereby the utility may, if it feels aggrieved at any action of the common council, or if the municipality shall feel aggrieved at any action of the utility, have the matter heard by the Public Service Commission. In view of what we have said regarding the ordinance in question, and the claimed effect of the removal by appellee of one of its tracks, we are required to hold

that the question between appellant and appellee is one of service, and in such cases the procedure pointed out by §110, *supra,* and other sections of the act referred to therein, requires the matter to be first submitted to the commission.

The court below did not err in sustaining the demurrer to the complaint. Judgment affirmed.

NOTE.—Reported in 120 N. E. 27. Street railroads: regulation by municipalities, 104 Am. St. 638; power of municipalities to prevent laying an additional track under a franchise originally granting the right to lay double tracks, 36 L. R. A. (N. S.) 850. See under (1) 36 Cyc 1379; (2) 28 Cyc 849.