## PUBLIC SERVICE COMMISSION ET AL. *v.* CITY OF INDIANAPOLIS ET AL.

[No. 24,147.  Filed December 22, 1922.  Rehearing denied March 27, 1923.]

1.  PUBLIC SERVICE COMMISSIONS.— *Orders.— Action to Enjoin Performance.— Collateral Attack.—* An action to enjoin acts proposed to be done under an alleged void order of the Public Service Commission is a collateral attack upon its action, and can only succeed in case the order was wholly void, either because of fraud which entered into it, or because the commission was without jurisdiction or exceeded its jurisdiction in making the order.  p. 42.

2.  PUBLIC SERVICE COMMISSIONS.—*Orders within Jurisdiction.— Conclusiveness on Collateral Attack.—*Where the Public Service Commission acted within its jurisdiction in making an order authorizing one public utility corporation to purchase several other public utility companies, and its action was not vitiated by fraud, its decision of all questions of fact as to the value of the properties, the sufficiency of the income to pay interest and dividends on the bonds and stocks authorized, the petitioner's qualification as a proposed purchaser, and all other questions which it was required to decide as a preliminary to taking action in the matter is conclusive upon the courts as against collateral attack.  p. 43.

3.  PUBLIC SERVICE COMMISSIONS.— *Powers and Authority.— Issue and Sale of Stocks and Bonds.— Statutes.—* Under §§10052k3-10052n3 Burns 1914, Acts 1913 p. 167, §§89-92, the Public Service Commission has power to hear and determine the facts in relation to a proposed issue and sale of stock, bonds, and other securities, but its action is mandatory if it finds the existence of facts showing a necessity for issuing them.  p. 43.

4.  CORPORATIONS.—*Transactions between Corporations.—Validity.—Boards of Directors in Common.—*That two corporations have a majority or the whole membership of their boards of directors in common does not necessarily render transactions between them void, in the absence of facts showing fraud, even as against stockholders, especially where the stockholders consent to all that is done.  p. 45.

5.  PUBLIC SERVICE COMMISSIONS.— *Rates Charged by Public Utility.—Determination.—Purchase Price of Property.—Statutes.—*It is not the purchase price of its property alone which will determine the rates to be charged consumers by a public utility, the question whether the rates charged are unreasonable being subject to investigation and review by the Public

Service Commission at any time, under §§10052e2-10052t2 Burns 1914, Acts 1913 p. 167, §§57-72.  p. 46.

6.  PLEADING.—*Complaint.*—*Averment of Fraud.*—*Sufficiency.*— *Excessive Valuation of Property by Public Service Commission.*—In an action to enjoin one public utility corporation from purchasing the stock of several other utility companies and such other utility companies from selling to the corporation on the terms and under the condition fixed ·by an order of the Public Service Commission, a mere averment that the property to be purchased was only of the value of $10,300,000, but that the commission, after hearing conflicting evidence on the question of value, had found it to be worth $17,500,000, is insufficient to charge fraud.  p. 47.

7.  PUBLIC SERVICE COMMISSIONS.—*Powers and Authority.*—*Control over Public Utilities.*—*Powers of Municipal Corporations.* —*Statutes.*—Acts 1913 p. 167, §10052a *et seq.* Burns 1914, concerning public utilities, created the Public Service Commission of Indiana, and conferred upon it all powers of control theretofore enjoyed by municipalities, except such control as is reserved over streets by §110 of the act, providing that a city in which a public utility operates may determine, in the first instance, the quality and character of service to be rendered thereby within its limits, and fix terms and conditions on which it may be permitted to occupy the streets, and public property, and may require reasonable and necessary additions and extensions to the physical plant of the utility, but that its action shall be subject to review by the Public Service Commission, which after notice and hearing may grant the right to occupy the streets on such conditions as it shall impose.  p. 47.

8.  STATUTES.—*Construction.*—*Laws Passed at Same Session of Legislature.*—Two statutes enacted at the same session of the legislature are to be construed together as parts of the same law, so as to give effect to each, if possible.  p. 49.

9.  STATUTES.— *Construction.*— *Later Statute Re-enacting Former.*—*Effect on Intermediate Act Qualified by Former.*—Where a later statute merely re-enacts the provisions of an earlier one, it does not repeal an intermediate act which has qualified or limited the earlier one, but such intermediate act will be deemed in force, and to qualify or modify the new act in the same manner as it did the first.  p. 49.

10.  MUNICIPAL CORPORATIONS.—*Powers.*—*Right to Contract with Public Utility Companies.*—*Authority of Public Service Commission.*—*Statutes.*—The right given to boards of public works to ·contract for the furnishing of light, heat or power to a city or its inhabitants under §93 of Acts 1905 p. 219 (§8649

*et seq.* Burns 1914) as amended by Acts 1913 p. 253 (§8696 Burns 1914), is the same right to determine by contract, ordinance or otherwise the terms and conditions on which a public utility may be permitted to occupy the streets of a city, which is referred to and made subject to the control of the Public Service Commission by §110 of Acts 1913 p. 167 (§10052a *et seq.* Burns 1914), concerning public utilities, and such §110 is not repealed by amended §93 of the other act. p. 50.

11. ELECTRICITY.—*Right of City to Purchase Stock in Utility.— Approval of Public Service Commission.—Statutes.*—Whatever right a city might have under §8649 *et seq.* Burns 1914, Acts 1905 p. 253, together with amendments thereto, to purchase stock in a local electric company is subject to the right of the company to sell its property with the consent of three-fourths of its stock and the approval of the Public Service Commission. p. 50.

12. INJUNCTION.— *Right to Writ.— Preservation of Barren Right.*—An injunction will not · issue to preserve a barren right to purchase something which it does not appear is or ever will be for sale, or will be purchased by complainant if offered for sale. p. 50.

13. MUNICIPAL CORPORATIONS.— *Powers.— Purchase of Public Utility.—Statutes.*—A proposed purchase by a public utility corporation of the property of other public utilities operating in various cities will not prevent either of those cities from buying all of such property that lies within that city, or is used in operating the plant therein, without reference to other plants which the company may operate in other cities, as §103 of the Public Service Commission Act (Acts 1913 p. 167, §10052a *et seq.* Burns 1914) expressly confers upon municipal corporations the right and power, with the approval of the Public Service Commission, to acquire by purchase or condemnation the property of any public utility actually used and useful for the convenience of the public. p. 51.

14. ELECTRICITY.—*Right of Public Utility Corporation to Purchase Competing Utilities.—Terms of Purchase.—Authority of Public Service Commission.— Statutes.—* Section 95½ of the Public Service Commission Act (Acts 1913 p. 167, §10052a *et seq.* Burns 1914), construed in connection with other statutes authorizing different kinds of public utility companies to sell and convey their property and franchises, authorizes competing companies, with the consent of the Public Service Commission, to merge, or enter into contracts for the operation of their lines and plants in connection with each other, and, with the consent of the holders of three-fourths of the capital stock

outstanding, it authorizes any and all corporations organized and operating as public utilities to buy from and sell to each other, on terms fixed by the commission, whether they do or do not own and operate intersecting or parallel lines, or conduct their business in the same locality. p. 54.

15. PUBLIC SERVICE COMMISSIONS.— *Sale of Public Utility.— Order of Commission.— Validity.— Collateral Attack.— Rights of Nonconsenting Stockholders.*—In an action to enjoin a utility corporation from purchasing the property of other public utilities and the sale thereof on the terms and under the conditions fixed by an order of the Public Service Commission, the fact that a minority of nonconsenting stockholders might have rights does not make the order void for lack of jurisdiction, nor open to collateral attack by persons and corporations who own no stock. p. 56.

16. CORPORATIONS.—*Merger.—Sale of Property of One Corporation to Another.*—The proposed sale by certain utility companies to another company of property owned by them does not constitute a merger or consolidation, the consolidation of corporations being different from a sale of property by one to another. p. 57.

17. STATUTES.—*Title of Supplemental Act.—Sufficiency.*—Where the title of Acts 1901 p. 289 (§4319 Burns 1914) stated that it was, "An act concerning the organization and perpetuity of voluntary associations," the mere fact that the title of a supplemental act passed in 1903 (Acts 1903 p. 180, §4294 Burns 1914), while reciting the title of the original act in full and stating that it authorized the formation of corporations under that act, further stated that they were to be "for certain purposes not therein named," did not make such supplemental act unconstitutional for lack of sufficient title, as the title to the original act, while stating the one subject to which it and all amendatory and supplemental acts must be limited, was broad enough to embrace the organization of voluntary associations for any and every purpose. p. 57.

18. CORPORATIONS.— *Voluntary Associations.— Statutes.*— Acts 1921 p. 93 (§4044a et seq. Burns' Supp. 1921), concerning the organization and control of corporations for pecuniary profit, did not repeal Acts 1903 p. 180 (§4294 Burns 1914), authorizing the incorporation of voluntary association to build and operate street or interurban railroads, and plants for the creation and distribution of electric and other heat, light and power. p. 58.

19. PUBLIC SERVICE COMMISSIONS.— *Powers and Authority.— Orders.—Vacation and Amendment.—New Orders.*—Where a public utility corporation filed a petition seeking the consent

of the Public Service Commission to purchase the property of other public utility companies, the commission had power, upon amendment of the petition by reducing the amount of securities sought to be issued, to vacate its order denying the original petition, and enter a new order granting it, where none of the parties were shown to have altered their position after the original order was made, in reliance upon it; and want of jurisdiction to make the amended order was not shown by reason of the denial of the original petition, and the fact that the consent of the selling companies was not refiled after the amendment was made. p. 59.

20. PLEADING.—*Complaint.—Pleading Conclusions of Law.*—In an action to enjoin a corporation from purchasing the property of other public utility companies, allegations in the complaint that certain acts are "unlawful and void," that the Public Service Commission "had no power" to do certain acts, and that there was "no law authorizing" certain things to be done, are not averments of facts, but only the pleader's conclusions of law, and must be disregarded. p. 61.

21. PUBLIC SERVICE COMMISSIONS.—*Purchase and Sale of Utilities under Order of Commission.— Injunction.— Complaint.— Sufficiency.*—In an action to enjoin a corporation from purchasing the property of several public utility companies and such companies from selling on the terms and under the conditions fixed by an order of the Public Service Commission, a complaint failing to show that the commission was without jurisdiction, or that the order complained of was fraudulent, *held* insufficient to state a cause of action. p. 61.

From Marion Superior Court (A15,615); *Linn D. Hay,* Judge.

Action by the City of Indianapolis and others against the Public Service Commission and others. From a judgment for plaintiffs, the defendants appeal. *Reversed.*

*U. S. Lesh,* Attorney-General, *Mrs. Edward Franklin White,* Deputy Attorney-General, *Bell, Kirkpatrick & McClure, Charles McPherson, M. E. Nebeker, Haynes & Mote* and *Fesler, Elam & Young,* for appellants.

*Fred H. Jessup, Fred Bates Johnson, Samuel Ashby, Taylor E. Groninger* and *B. C. Moon,* for appellees.

EWBANK, J.—Appellees sued to enjoin the appellant Indiana Electric Corporation from purchasing the property of each of seven public utility companies, its coappellants, on the terms and under the conditions fixed by an order of the Public Service Commission, at values found by the commission, and to enjoin the other seven companies from selling to it at those values and on those terms. A demurrer to the complaint was overruled, and appellants excepted, and upon their refusal to plead further, a judgment was rendered enjoining appellants from exercising any rights under the order in question, or doing any act or thing pursuant to the authority therein and thereby granted, or in any way enforcing such order, and commanding that appellants pay the costs. Overruling the demurrer to the complaint is the only error assigned.

All parties insist that this is a suit in chancery for an injunction against enforcing or obeying an order of the commission alleged to be void, and not an appeal from the order, both briefs pointing out that no appeal lies from an order of the Public Service Commission granting to a corporation permission to issue stocks and bonds, or fixing the price at which a public utility corporation may sell its property, or granting permission to one public utility corporation to sell to another. *Public Service Commission* v. *State, ex rel.* (1916), 184 Ind. 273, 282, 111 N. E. 10; *State, ex rel.,* v. *Lewis* (1918), 187 Ind. 564, 120 N. E. 129, 132.

The complaint proceeds throughout on the theory of enjoining acts proposed to be done under an alleged void order of the commission, and not on the theory of an attempted appeal. Such a suit is a collateral attack upon the action of the commission, and can only succeed in case the order was wholly void, either because of fraud which entered into it, or because the commission was without jurisdiction, or ex-

ceeded its jurisdiction, in making such order. *Southern Ind. R. Co.* v. *Railroad Commission, etc.* (1909), 172 Ind. 113, 117, 118, 87 N. E. 966; *Riverside Oil Co.* v. *Hitchcock* (1903), 190 U. S. 316, 324, 325, 23 Sup. Ct. 698, 702, 47 L. Ed. 1074; *People, ex rel.,* v. *McCall* (1916), 219 N. Y. 84, 87, 88, 113 N. E. 795, Ann. Cas. 1916E 1042; affirmed 245 U. S. 345, 347, 348, 38 Sup. Ct. 122, 62 L. Ed. 337; *Pollitz* v. *Public Utilities Commission* (1917), 96 Ohio St. 560, 118 N. E. 107; *Utilities Commission* v. *Springfield Gas Co.* (1919), 291 Ill. 209, 125 N. E. 891.

If the commission had jurisdiction and kept within it, and its action was not vitiated by fraud, its decision of all questions of fact as to the value of the prop-

2, 3. erties, the sufficiency of the income to pay interest and dividends on the bonds and stock authorized, the petitioner's qualifications as a purchaser, and all other questions which it was required to decide as preliminary to taking action in the matter, is conclusive upon the courts in a collateral action. Sections 89, 90, 91 and 92 of the act creating the Public Service Commission (Acts 1913 p. 167, §§10052k3-10052n3 Burns 1914) were construed by this court in a recent decision as giving the commission power to hear and determine the facts in relation to a proposed issue and sale of stocks, bonds and other securities, but making its action mandatory if it found the existence of facts showing a necessity for issuing them.

The court said: "From the provisions of this act it is apparent that the Public Service Commission is required to hear and determine the facts upon which the application is based and the facts thus determined constitute the foundation upon which its order shall be based. If the facts thus found are such as to entitle the utility to a certificate of authority to issue and sell bonds in a given amount, it is the duty of the commis-

sion to issue such a certificate. * * * If the commission had found that the utility had expended $103,000 in extensions and improvement of its distributing system, and had also found that the instrumentalities acquired did not possess a money value in excess of $75,000 by reason of the fact that a large portion of the newly acquired instrumentalities constituted a duplication of other instrumentalities existing and in use by another public utility, a different question would have been presented. The order shows that the expenditure of $103,-000 was made by the company for certain purposes and that the issue of bonds requested was to reimburse the company for the money expended for such purpose. There is no finding that the extensions and improvements for which the expenditure was had did not represent a money value to the utility of the full amount of their costs. * * * Under the facts found by the commission, this statute conferred upon appellee the right to receive at the hands of the commission a certificate of authority to issue bonds to the amount of $103,000." *Public Service Commission* v. *State, ex rel., supra.*

And it was held that a complaint alleging only that the relator company had applied for authority to issue and sell bonds to the amount of $103,000 and that the Public Service Commission, in passing upon its application, had found the facts to be as stated above, but that the order made upon those facts only authorized the issue of $75,000 of bonds, stated a cause of action against the commission for a writ of mandamus to compel the grant of authority to issue $28,000 more. *Public Service Commission* v. *State, ex rel., supra.*

Under the rule thus declared, if the Public Service Commission, upon conflicting evidence as to the values of the different properties in question, decided that they were of the values set out in its finding, in the aggregate

amount of $17,500,000, as stated in the finding and supplemental finding recited in the complaint, such finding is conclusive on the court and the law as applied to those facts must determine the rights of appellees, unless the commission was without jurisdiction or its finding was vitiated by fraud.

The facts alleged in the complaint on which counsel for the appellees rely as charging fraud are that the proposed purchaser, Indiana Electric Corporation, and three of the seven companies whose properties it asked authority to buy, have the same president and are "owned and controlled by the same interests," and that said owners own all the stock of two holding companies that own all the stock of those three selling companies; with the further alleged facts that the aggregate value of the property proposed to be purchased (appellant's say) is only $10,300,000, while the commission found its value to be $17,500,000, and authorized the issue of stocks and securities in that amount to pay for it. It does not appear but that all owners of stock in both selling and purchasing corporations may have the same proportionate interest in one as in the other, and all may be consenting to the purchase.

That two corporations have a majority or the whole membership of their boards of directors in common does not necessarily render transactions between them 4. void, in the absence of other facts showing fraud even as against stockholders, especially where the stockholders consent to all that is done. *Kidd* v. *Trust Co.* (1909), 75 N. H. 154, 71 Atl. 878; *Blum* v. *Whitney* (1906), 185 N. Y. 232, 77 N. E. 1159; *Evansville Public Hall Co.* v. *Bank of Commerce* (1896), 144 Ind. 34, 42 N. E. 1097; 3 Cook, Corporations (7th ed.) §658.

And it is not the purchase price of its property alone which will determine the rates to be charged consumers

by a public utility, the question whether or not

5.      the rates charged are unreasonable being subject

to investigation and review by the Public Service Commission at any time. Acts 1913 p. 167, §§57-72, §§10052e2-10052t2 Burns 1914.

The order of the Public Service Commission attacked by the complaint in this case expressly provides: "That the value found for the purpose of purchase and sale and the issuance of securities shall in no wise be considered as a finding or indication by the Commission of the value of the constituent properties for rate-making purposes · * * · * and the Commission stipulates that any finding of a fair value of the property of the Indiana Electric Corporation for purposes of rates which it may make in the future will be made and determined entirely independent of· and unaffected by its finding herein," and that such finding shall not affect rates to be established in the future.

Whatever else may be said or thought of this finding, it certainly will preclude appellant's from setting up this valuation as the basis for charging excessive rates, to defraud the residents in the appellee cities. The complaint does not state the character of the property to be purchased, and, so far as appears, half of it may not now be in actual use in serving the public. And the value of property not used for that purpose would not be a factor in determining the rates for service until and unless it shall be so used. The cost of operation is influential in determining the rates to be charged, and the finding of the commission, as recited in the complaint, was that by the joint operation of the several properties, as planned by the petitioner, "a net saving of approximately $700,000 a year" would probably be made in operating costs as a result of the single ownership, which would be equal to seven per cent. on $10,000,000.

The mere averment that this property was only of the value of $10,300,000, but that the commission, after hearing conflicting evidence as to such value, had

6. found it to be worth $17,500,000, does not charge fraud. The witnesses believed by the commission may have been mistaken and the commission may have been in error in thinking their testimony entitled to credit. But a mere mistake of judgment is not fraud.

Appellees insist that the commission was without jurisdiction to permit a sale of these properties until the several cities in which the proposed vendors are

7. operating as public utility companies shall have given their consent, asserting that those cities have "almost exclusive and unlimited jurisdiction and control over their streets." Certain statutes enacted and cases decided prior to the passage of the act concerning public utilities (Acts 1913 p. 167, §10052a et seq. Burns 1914) declared that rule. But each of the cases cited by appellee declares that, "as the legislature gave, so that body may take away or modify the power" to control the streets within the city. *Coverdale* v. *Edwards* (1900), 155 Ind. 374, 380, 58 N. E. 495; *State, ex rel.,* v. *Stickelman* (1914), 182 Ind. 102, 106, 105 N. E. 777.

And the act of 1913 concerning public utilities—"created the Public Service Commission of Indiana, and conferred upon it all the powers of control heretofore employed by the municipalities, save and except such control as is reserved * * * over streets by §110. Acts 1913 p. 167, §10052a et seq. Burns 1914." *City of Vincennes* v. *Vincennes Traction Co.* (1918), 187 Ind. 498, 503, 120 N. E. 27.

Section 110 of the acts of 1913 (Acts 1913 p. 167, *supra*), to which reference is made, provides that the city in which a public utility operates may determine, in the first instance, the quality and character of service

to be rendered by such public utility within its limits, and fix terms and conditions on which it may be permitted to occupy the streets and public property, and may require reasonable and necessary additions and extensions to the physical plant of the utility, but that its action shall be subject to review by the Public Service Commission, which, after notice and a hearing, may grant the right to occupy the streets on such conditions as it shall impose. Acts 1913 p. 167, §110, §10052g4 Burns 1914.

But while the act concerning municipal corporations was passed in 1905 (Acts 1905 p. 219, §8649 *et seq.* Burns 1914) and §53, thereof, defining the powers of the common council over streets, as well as other matters (§8655 Burns 1914, *supra*), and §267, purporting to give the city exclusive power over its streets (§8961 Burns 1914, *supra*) have not since been amended, and §254, which conferred authority on cities to make franchise contracts with public utility companies was last amended in 1911 (§8939 Burns 1914, Acts 1911 p. 181), it appears that §93, which defines the duties and powers of boards of public works, was amended in 1913 (Acts 1913 p. 253, §8696 Burns 1914) by changing the time for giving notice, as provided in the ninth subdivision, from three months to twelve months, and limiting the duties imposed on boards of public works in cities of the fourth class when not charged with any duties by ordinance, as originally provided in the twenty-third subdivision, and inserting certain provisions saving rights that had accrued before the amendment was made; but otherwise re-enacting the section in exactly the same language used therein eight years before. This amendment of §93 was approved by the Governor on March 5, 1913, the next day after the approval (March 4, 1913) of the act concerning public utilities, by which the Public Service Commission was

created.   Neither act contained an emergency clause, and all acts passed in 1913 without emergency clauses became laws at the same time, when their publication and circulation in all counties of the state was completed and the Governor issued his proclamation (Art. 4, §28 Constitution) on April 30, 1913.  The Public Utility act contained a provision (Acts 1913 p. 167, §129) that it should take effect and be in force from and after May 1, 1913.

Appellee insists that the re-enactment, in 1913, (Acts 1913 p. 253, *supra*) in exactly the same words, of subdivisions eight and nine of §93 of said act of 1905 (Acts 1905 p. 219, §93) concerning municipal corporations, conferred upon boards of public works in cities exclusive power to fix, by contract, the conditions under which and the price at which public utility companies shall furnish light, heat and power to the citizens, and that it repealed so much of the act concerning public utilities as purports to give the Public Service Commission authority in such matters.  This contention cannot be upheld.  Two statutes enacted at the same session of the legislature are to be construed together as parts of the same law, so as to give effect to each, if that be possible.  1 Sutherland, Statutory Construction (2d ed.) §268; Endlich, Interpretation Statutes §188; *Holle* v. *Drudge* (1920), 190 Ind. 520, 129 N. E. 229, 230.  And where a later statute merely re-enacts the provisions of an earlier one, it does not repeal an intermediate act which has qualified or limited the earlier one, but such intermediate act will be deemed to remain in force, and to qualify or modify the new act in the same manner as it did the first.  1 Sutherland, Statutory Construction (2d ed.) §273; Endlich, Interpretation Statutes §194.

Applying these rules of construction, it is apparent

that the right given to boards of public works to contract for the furnishing of light, heat or power to the city or its inhabitants, by the amended §93 of the act concerning municipal corporations (Acts 1913 p. 253, *supra*), is the same right to determine by contract, ordinance or otherwise the terms and conditions on which a public utility may be permitted to occupy the streets of the city, which is referred to, and made subject to the control of the Public Service Commission by §110 of the act concerning public utilities (Acts 1913 p. 167, *supra*), and that §110 was not repealed by the other act.

The eighth clause of said amended §93 gives the board of public works of a city power "to purchase  *  *  * or hold a majority of the stock" in public utility corporations organized to build and operate plants for furnishing light, heat or power, but only pursuant to an ordinance specifically directing the same, after an election had in relation thereto. All the provisions for passing such ordinances and holding such elections were enacted before the act concerning public utilities was passed. §8655, cl. 36, Burns 1914, *supra*; §8921 Burns 1914, Acts 1911 p. 563; §§8938, 8939 Burns 1914, Acts 1911 p. 179, §§1, 2.

For the reasons stated above, whatever right the city might have to purchase stock in a local electric company is subject to the right of the company to sell its property, with the consent of the holders of three-fourths of its stock and the approval of the Public Service Commission. And the several statutes must be given such a construction as will uphold the power expressly conferred upon the Public Service Commission to give such approval. Besides, the complaint fails to show that either of the plaintiffs (appellees) is seeking or even intending to purchase any stock, or that any stock is for sale which it might purchase if it so de-

sired.   And an injunction will not issue to preserve a barren right to purchase something which it does not appear is, or ever will be for sale, or will be purchased by plaintiff if offered for sale.

The proposed purchase by the Indiana Electric Corporation of the property of other public utilities operating in Indianapolis or in Kokomo will not prevent either of those cities from buying all of such property that lies within that city, or is used in operating the plant therein, without reference to other plants which the company may operate in other cities. Section 103 of the Public Service Commission Act expressly confers the right and power, with the approval of the Public Service Commission, to acquire by purchase or condemnation "the property * * * actually used and useful for the convenience of the public," of any public utility.   Acts 1913 p. 167, §103, §10052z3 Burns 1914.

In any event, the appellees have only such rights and powers in this connection as are conferred by the statutes in force, and what the legislature had conferred by one statute it could limit, modify or take away by another statute.   So that, having found that the act of 1913 (Acts 1913 p. 167, §110, *supra*) concerning public utilities was not repealed, the question is as to the construction of its provisions.   That statute contains the following provisions (our italics) :   "Sec. 89.   No public utility shall issue any stock or certificate of stock, except in consideration of money or of labor or property at its true *money value as found* * * * *by the commission* actually received by it.   No stock or certificate of stock shall be sold at a discount or premium *without the approval of the commission,* and if sold at a discount, the commission *shall make a record thereof* and give such publicity of the fact as it may deem necessary, at the expense of the utility.   No public utility

shall issue any bonds, notes or other evidences of indebtedness, except for money or labor or property estimated at its true money value *as found and determined by the commission* actually received by it equal to a sum to be approved by the commission *not less than seventy-five per cent. (75%) of the face value thereof.*  \*   \*   \*  The amount of bonds, notes and other evidences of indebtedness which any public utility may issue shall bear a reasonable proportion to the amount of stock and certificates of stock issued by such utility, due consideration being given to the nature of the business in which the corporation is engaged, its credit, future prospects and earnings, the effect which such issue will have upon the management and efficient operation of the public utility by reason of the relative amount of financial interest which the stockholders will have in the corporation and the circumstances surrounding the operation and business of the corporation.

"Sec. 90.   A public utility as defined in section one (1) of this act may, with the approval of the commission, issue stock, certificates of stock, bonds  \*   \*   \*  when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, plant or distributing system,  \*   \*   \*.

"Sec. 92.   If the commission shall *determine that such proposed issue complies with the provisions of this act such authority shall thereupon be granted,* and it shall issue to the public utility a certificate of authority stating:   (a) the amount of such stocks, certificates of stock, bonds, notes or other evidences of indebtedness, reasonably necessary for the purposes for which they are to be issued, and the character of the same; (b) the purposes for which they are to be issued and the property or services to be acquired thereby valued in detail. Such public utility shall not apply the proceeds of such stock, bonds, notes  \*   \*   \*  to any purposes not

specified in such certificate, nor issue such stock, bonds, notes * * * in greater amounts than specified in such certificate. * * * For the purpose of enabling it to determine whether it should issue such an order, the commission shall make such inquiry or investigation, hold such hearings and examine such witnesses, books, papers, documents or contracts as it may deem of importance in enabling it to reach a determination. The commission shall have power to impose such conditions upon a public utility in issuing of securities as it may deem reasonable. Such public utilities shall not, without the consent of the commission, apply said issue or any proceeds thereof to any purpose not specified in such order. * * *

"Sec. 95½. That with the consent and approval of the commission but not otherwise, any two or more public utilities, furnishing a like service or product and doing business in the same municipality or locality within this state, or any two or more public utilities whose lines intersect or parallel each other within this state may be merged and may enter into contracts with each other that will enable such public utilities to operate their lines or plants in connection with each other; and any public utility may also, with the consent of the holders of three-fourths of the capital stock outstanding, purchase or lease the property, plant or business or any part thereof of any other such public utility at a price and on terms fixed by the commission. Any such public utility may, with the consent of three-fourths of the holders of outstanding stock, sell or lease its property or business or any part thereof to any other such public utility at a price and on terms fixed by the commission upon paying in cash to non-consenting stockholders the appraised value of their stock as fixed by the commission." Acts 1913 p. 167, §§89, 90, 92, 95½, §§10052k3, 1005213, 10052n3, 10052r3 Burns 1914.

A section of the statute expressly adopted as part of the one under which the complaint alleges the proposed purchaser, Indiana Electric Corporation, was organized, provides as follows: "Every such association * * * shall have and possess all the rights, powers and privileges given to corporations by common law, to sue and be sued, to borrow money * * * and rent, lease, purchase, hold, sell and convey such personal and real property as may be necessary and proper for the purpose of erecting buildings and for other necessary objects of any such corporation." §4319 Burns 1914, Acts 1901 p. 289, §28; §4294 Burns 1914, Acts 1903 p. 180.

It is not alleged under what statute any of the proposed selling corporations were organized. But it is averred that three of them are engaged in manufacturing and selling electricity in certain named cities, and that a fourth is so engaged, and is also engaged in operating an interurban railway, that a fifth is engaged in manufacturing and selling electricity, and also artificial gas in a city named, a sixth in manufacturing and selling gas in another city, and the seventh in manufacturing and selling electricity, and in supplying hot water heating service in several different cities and towns, and that each company is operating such business as a public utility. It is not shown whether any of them was incorporated under the statute last above quoted, nor under what statute any were incorporated other than that one, which provides for the incorporation of companies to construct and operate "street or interurban railroads and plants for the creation and distribution of electric and other heat, light and power." §4294 Burns 1914, *supra.*

Another act under which companies to manufacture and sell electricity might be incorporated, passed long before the act concerning public utilities was enacted, expressly empowers companies formed under it for the

manufacture and sale of electricity "to acquire and hold property, real and personal, for the purposes of its organization, and to dispose of the same at pleasure." §5074 Burns 1914, Acts 1907 p. 277, §1.

Another act expressly authorizes "any street railroad company" to sell or otherwise transfer its property, franchises and assets of every description or any portion of them, to any company authorized to acquire them, pursuant to a vote of a majority of the stockholders. §5652 Burns 1914, Acts 1903 p. 330.

And another act gives any electric street railway company power to acquire and operate a plant for the purpose of supplying electricity and steam, for light, heat and power, in the town or city in which it operates, and to sell, convey, or otherwise dispose of all of its property and franchises, including what has been so acquired. §§5697, 5698, Acts 1895 p. 193.

And many other statutes of a similar character have been enacted and were in force in 1913, authorizing different kinds of public utility companies to sell and convey their property and franchises on conditions therein prescribed.

The only statutes assuming to restrict or take away the power conferred by these statutes upon public utility companies to buy from and sell to each other, with the consent of their stockholders or of designated public officers, which were in force in 1913, when the act concerning public utilities was passed, were a series of acts forbidding persons and corporations to make contracts and agreements that would tend to monopolize any part of the trade or commerce of the state or restrict free competition.     §§3866-3892 Burns 1914, Acts 1907 p. 490, Acts 1897 p. 159, Acts 1899 p. 257, Acts 1901 p. 178.

This being the law at the time the act concerning public utilities was passed, in 1913, section 95½ (Acts 1913

p. 167, *supra*), above quoted, was so framed as to authorize competing companies, with the consent of the Public Service Commission, to merge or enter into contracts for the operation of their lines and plants in connection with each other.    And after having so provided, it was then made to provide that, "*any public utility* may also, with the consent of the holders of three-fourths of the capital stock outstanding, purchase or lease the property, plant or business or any part thereof of any other such public utility at a price and on terms fixed by the commission," and that "any such public utility," with the consent of a like number of its stockholders, may sell its property or business, or part thereof, at a price and on terms fixed by the commission, paying nonconsenting stockholders for their stock.

Interpreted in the light of the facts we have stated, the provisions last quoted clearly authorize any and all corporations organized and operating as public utilities to buy from and sell to each other, on terms fixed by the commission, whether they do or do not own and operate intersecting or parallel lines, or conduct their business in the same locality.    §10052r3 Burns 1914, *supra.*

The section quoted does not forbid the purchase and sale which the complaint in this case alleges certain of the appellees to be intending, but expressly authorizes it if duly approved by the commission and consented to by the stockholders.

Appellees next suggest that the order of the commission authorizing the proposed purchase and sale does not value the property of each selling company separately.    But the record of the Public Service Commission set out in the complaint shows that twenty-five days after the order authorizing the proposed purchase and sale was made, in passing upon and overruling a petition for a rehearing filed by appellees, the commission amended its order so as to set out the

values of each selling company's property separately, as well as the combined value of all.

The order of the commission, as finally amended, provides that the proposed purchase and sale shall not be consummated unless and until (a) three-fourths of the holders of outstanding stock in each of the selling companies shall have consented thereto; and (b) there shall have been paid in cash to nonconsenting stockholders of each company the appraised value of their stock, in each case as fixed by the commission; and (c) a full and complete showing shall have been made to the commission that each of said conditions has been fully complied with. It does not appear that there are any nonconsenting stockholders, or that any of them are resisting the order, if any there are. And no stockholders of the proposed purchasing company are shown to be nonconsenting. The fact that a minority of nonconsenting stockholders, if there were any, might have rights, does not make the order void for lack of jurisdiction, nor open to collateral attack by persons and corporations who own no stock.

The proposed sale by certain companies to another company of property owned by them does not constitute a merger or consolidation, and no question is presented for decision as to the right or power of these companies to merge or consolidate. The consolidation of corporations is wholly different in law from a sale of property by one to another. *Norton* v. *Union Traction Co.* (1915), 183 Ind. 666, 680, 110 N. E. 113, Ann. Cas. 1918A 156.

The act of 1901, Acts 1901 p. 289, *supra,* was entitled "An act concerning the organization and perpetuity of voluntary associations," with a further recital that it repealed laws in conflict therewith, legalized certain corporations, and declared an emergency. The title of the act of 1903, Acts 1903 p. 180,

*supra,* recited that it was "an act authorizing the formation of corporations under the provisions of 'An act concerning the organization and perpetuity of voluntary corporations,'" etc. (repeating the title in full). "for certain purposes not therein named."

The title of the first act did not state any purposes for which it authorized the formation of corporations, but the body of that act enumerated a number of purposes for which they might be organized. The statement in the title that it was, "An act concerning the organization and perpetuity of voluntary associations" stated the one subject to which it and all amendatory and supplemental acts must be limited, but that subject embraced the organization of voluntary associations for any and every purpose. And the mere fact that the title of the supplemental act, while reciting the title of the original act in full and stating that it authorized the formation of corporations under that act, further stated that they were to be "for certain purposes not therein named," did not make it insufficient. The act of 1903, (Acts 1903 p. 180, *supra*) is not unconstitutional for lack of a sufficient title.

As was stated above, one of the powers conferred by the act of 1901 (Acts 1901 p. 289, *supra*), under which the act of 1903 (Acts 1903 p. 180, *supra*) authorizes the organization of corporations for the operation of electric light, heat and power plants and electric railways, is to "purchase, hold, sell and convey" real and personal property necessary and proper for the objects of the corporation. §4319 Burns 1914, *supra.*

Acts 1921 p. 93, §4044a *et seq.* Burns' Supp. 1921, provides in §29 (page 102) that it "shall not apply to the organization and control of the following classes of corporations now or hereafter organized and conducted under existing law, to wit: * * * gas * * * light, heat and power companies

interurban railroad companies, * * *." Therefore it did not repeal the statutes authorizing the incorporation of voluntary associations to build, acquire and operate "street or interurban railroads, and plants for the creation and distribution of electric and other heat, light and power."

The record of the action by the commission as recited in the complaint in this case affirmatively shows that all the corporations whose property the petitioner proposed to purchase were before the Public Service Commission as parties, and joined in a written waiver of notice and request that the petitioner "be given authority to acquire the properties described in its petition." It is alleged that the original petition, asking authority to issue securities in the total amount of $18,500,000 in exchange for the property of the selling companies, was denied by the commission September 13, 1921, and that seventy-seven days afterward an amended petition was filed, in response to which, on January 26, 1922, the commission set aside that ruling and made an order granting leave to issue securities in the amount of $17,500,000, and thereafter, in ruling on a petition for a rehearing, amended that order so as to fix a specific value on the property of each corporation whose property the petitioner was granted leave to purchase, in the total amount of $17,500,000, the final amendatory order being made February 10, 1922. Appellees insist that the entry of an order denying the original petition, in September, exhausted the power of the commission and terminated its jurisdiction, so that it had no power to entertain an amended petition, nor to set aside its former order and grant the prayer of the amended petition.

The act concerning public utilities provides, in §76, Acts 1913 p. 167, *supra*, that the commission may, at any time, upon notice to the public utility and after an

opportunity to be heard, rescind, alter or amend any order fixing any rate or rates, tolls, charges or schedules, or any other order made by the commission. Section 12 (Acts 1913 p. 167, *supra*) provides that at any time the commission may make a revaluation of corporation property. Section 54 (Acts 1913 p. 167, *supra*) enacts that the commission may conduct any number of examinations of the same corporation, and that the result of an investigation shall not preclude further investigation. Section 109 (Acts 1913 p. 167, *supra*) provides that in case a court shall adjudge an order of the commission fixing the compensation to be paid to a public utility for property taken by a city or town to be unlawful, the commission shall alter and amend its previous order as it may deem necessary, so as to make it reasonable and lawful. Section 122 (Acts 1913 p. 167, *supra*) gives the commission power, when deemed necessary by it, temporarily to alter, amend or, with the consent of the public utility concerned, suspend any existing rates, schedules and orders relating to or affecting any public utility or part thereof. And throughout the entire act it provides only for the making of administrative orders by the commission, and not the rendition of final judgments. The commission had power, upon amendment of the petition by reducing from $18,-500,000 to $17,500,000 the amount of securities sought to be issued, to vacate the order denying the petition, and enter a new order granting it, none of the parties being shown to have altered their position after the original order was made, in reliance upon it. None of the selling companies who joined in the request that the original petition be granted is complaining of the orders made on the amended petition, and so far as appears from the complaint, they may not have withdrawn their consent, but may be ready and anxious to obey the final order granting the prayer of the amended petition.

Want of jurisdiction to make the amended order was not shown by the facts that the original petition was denied, and that the consent of the selling companies was not refiled after the amendment was made.

Appellees insist that the petitioner, Indiana Electric Corporation, although duly organized as a corporation for the operation of street or interurban railroads, and plants for the creation and distribution of electric and other heat, light and power (§4294 Burns 1914, *supra*), had not sufficient capital nor facilities to come within the description of a public utility which could lawfully be given authority to issue stocks, bonds and notes in the amount of $17,-500,000, and to purchase property of that value. These were questions of fact which the commission was required to decide as preliminary to any action it might take. And, as we have seen, its decision of questions of fact submitted to it is conclusive as against a collateral attack. Mere allegations of matters of law, as that certain acts "are unlawful and void," that the commission "had no power" to do certain acts, and that there was "no law authorizing" certain things to be done, are not averments of facts, but only of the pleader's conclusions of law and must be disregarded. The court does not look to averments by one party and admissions by the other to learn what is the law in force, and what statutes are valid.

The Public Service Commission is not shown by the facts alleged to have been without jurisdiction, nor is the order complained of shown to have been fraudulent. Therefore, the complaint does not state facts sufficient to constitute a cause of action.

The judgment is reversed, with directions to sustain the demurrer to the complaint.

Willoughby, J., dissents.