**BATESVILLE TELEPHONE CO. v. PUBLIC SERVICE COMMISSION OF INDIANA et al.**

**No. 1167.**

District Court, S. D. Indiana, Indianapolis Division.

Feb. 24, 1930.

Michael F. Bohland, of Batesville, Ind., and Thompson, Rabb & Stevenson, of Indianapolis, Ind., for plaintiff.

James M. Ogden, Atty. Gen., George W. Hufsmith, Asst. Atty. Gen., Francis M. Thompson, of Versailles, Ind., and Jackson & Jackson, of South Bend, Ind., for defendants.

BALTZELL, District Judge (after stating the facts as above).

This action was begun on the 10th day of December, 1928, wherein plaintiff seeks to enjoin the Public Service Commission of Indiana, the individual members thereof, the Attorney General, the Farmers' Mutual Telephone Company, and various individuals and representatives of the Farmers' Mutual Telephone Company, from enforcing or attempting to enforce, directly or indirectly, the order of such Commission entered under date of November 23, 1928. Plaintiff also seeks to enjoin the defendant telephone company, its officers, and all other present or prospective patrons thereof, from connecting the lines of such company physically with the lines of any resident of the town of Versailles; from furnishing telephone communication between residents of the town of Versailles and such telephone exchange located outside the corporate limits thereof; and from furnishing telephone service between any one or more residents of the town of Versailles and other residents of such town. Plaintiff further seeks to enjoin all defendants from establishing and maintaining through any instrumentality whatsoever, either directly or indirectly, competition with the plaintiff in the rendition of telephone service within the town of Versailles.

For convenience, the defendant Public Service Commission will hereafter be referred to as the "Commission," and the defendant the Farmers' Mutual Telephone Company will be referred to as the defendant "Telephone Company." The Shively-Spencer Utility Commission Act will be referred to as the Utility Act.

The jurisdiction of this court is invoked upon the theory that the enforcement of the order of the defendant Commission under date of November 23, 1928, will deprive plaintiff of its property without due process of law and will deny to plaintiff the equal protection of the law in violation of its rights guaranteed under the Fourteenth Amendment to the Constitution of the United States. The contention of plaintiff is that an enforcement of such order will permit all users of telephones of the town of Versailles, if they so elect, to connect with the exchange of the defendant Telephone Company, thereby creating intercommunication between all residents of such town, and will virtually destroy the value of plaintiff's property therein; that such order is void and of no effect, because the defendant Commission did not grant and give to this plaintiff a fair trial at the time of the hearing upon which such order was granted; that because of such order being void, the property of the plaintiff will be taken without due process as guaranteed by the Fourteenth Amendment to the Federal Constitution.

The plaintiff, having heretofore complied with the provisions of the Utility Act, is subject to the supervision and control of the defendant Commission in so far as the rates, service, etc., are concerned. It is entitled to charge the rates as fixed by the Commission and must render service to its patrons. The Commission, however, is authorized by the Utility Act to grant to another "public utility" furnishing telephone service, a certificate of public convenience and necessity, thereby authorizing such other utility to operate a telephone exchange, etc., within the limits of the town of Versailles. Provision is made in section 97 of the Utility Act for the issuance of such a certificate, as follows: "No license, permit or franchise shall be granted to any person, copartnership or corporation, to own, operate, manage or control any plant or equipment of any public utility in any municipality where there is in operation a public utility engaged in similar service under a license, franchise or permit without first securing from the commission a declaration, after a public hearing of all parties interested, that public convenience and necessity require such second public utility. * * *" Burns' Ann. St. 1926, § 12770.

Section 1 (1) of the Utility Act defines a "public utility" to be "every corporation, company, individual, association of individuals, * * * that now or hereafter may own, operate, manage or control * * * any plant or equipment within the state for the conveyance of telegraph or telephone messages * * * either directly or indirectly, to or for the public." Burns' Ann. St. 1926, § 12672.

■■ The first question that presents itself to the court for consideration is whether or not the defendant Telephone Company is a "public utility" as that term is defined in the Utility Act. If it is not a public utility, then the Commission has no jurisdiction over it, and the order entered on November 23, 1928, is void and of no effect. Under the evidence, the defendant Telephone Company owns and operates a telephone exchange to which is connected several rural lines. The exchange is located outside the corporate limits of the town of Versailles, and all its lines, at the present time, are outside the corporate limits of such town. But, under the evidence in this case, it is able, willing, and ready to furnish the citizens of Versailles with telephone service, if and when such citizens construct a line or lines and connect with its exchange. The number of its membership is not limited, so far as is disclosed by the evidence. It is ready and willing to serve all, that is, the general public. Under this situation, it cannot be seriously contended that the defendant Telephone Company is not a "public utility," as that term is used in the Utility Act. It is composed of an "association of individuals" who own, operate, manage, and control a plant and equipment within the state for the conveyance of telephone messages directly to and for the public. Furthermore, it has filed with the Commission, and there is now on file therewith, a schedule of rates, all of which indicate that both the Commission and the defendant Telephone Company are agreed that it is a "public utility." The mere fact that telephone service is to be furnished to its patrons at cost, that it is a co-operative association, and not formed for or operated at a profit, is immaterial. Neither of these elements is necessary to make of it a public utility.

Having determined that the defendant Telephone Company is a "public utility," as that term is used in the Utility Act, it is therefore under the supervision of the defendant Commission in so far as it may desire to furnish telephone service to citizens living within the corporate limits of the town of Versailles. In other words, such Telephone Company is empowered to furnish telephone service to its members, if all of such members reside in the rural community outside the corporate limits of the town of Versailles, without first obtaining the consent of or a certificate from the Commission. If, however, it desires to furnish such service to any of its members or to any citizen or citizens who reside within the corporate limits of such town, it must comply with the provisions of the Utility Act, and it cannot operate in such town unless there is issued to it by the Commission the necessary certificate.

■ The petition, signed by more than fifty business men and residents of the town of Versailles, filed with the Commission, praying for an order authorizing them to connect with and become patrons of the defendant Telephone Company, alleges that most of their customers, patients, and clients are farmers and people living outside the town of Versailles; that many of the people upon whom they depend for their business have discontinued the use of plaintiff's telephone since the increase in rates, because of their inability to pay such rates; that the service rendered by plaintiff does not reach the people upon whom they depend for business; that unless they be authorized to construct lines and connect with the exchange of defendant Telephone Company, both they and the town of Versailles will suffer great financial loss; that many of them have subscribed for, and already own, stock in defendant Telephone Company. It is apparent that this petition, being filed with the Commission, calls upon it to proceed in accordance with the Utility Act and to determine whether or not there exists within such town a condition which necessitates the issuance of a certificate of public convenience and necessity to the defendant Telephone Company. It is clearly within the jurisdiction of the Commission to determine that question. Its action in determining such question has every presumption in its favor when attacked collaterally in a court. Northern Ind. & Southern Mich. Telephone, Telegraph & Cable Co. v. People's Mutual Telephone Co. of LaGrange et al., 187 Ind. 486, 119 N. E. 212; Georgia Ry. & Power Co. et al. v. Railroad Commission of the State of Georgia et al., 262 U. S. 625, 43 S. Ct. 680, 67 L. Ed. 1144.

■■ The evidence discloses that the procedure, as outlined in the Utility Act, was fol-

lowed by the Commission in acting upon the petition thus filed with it; that proper notice was given all interested parties of the time and place of the hearing; that a public hearing was held; and that all interested parties were present at such hearing, including the plaintiff company, which appeared and resisted the petition. The Commission specifically found "that the public welfare demands that the service rendered by the Farmers' Mutual Telephone Company be made available to petitioners, * * * " and "that * * * the Commission should grant a certificate of convenience and necessity with authority to establish said lines and connections with the Farmers' Mutual Telephone Company." An order was therefore entered by the Commission, granting to the petitioners authority to construct lines and make connection with the exchange of the defendant Telephone Company. Such connection will, of course, give such petitioners intercommunication within such town. The mere fact that the word "public" is not used in the finding of the Commission preceding the expression "convenience and necessity," as used in the statute, does not alter the situation. The only certificate authorized by the statute is that of "public convenience and necessity," and there can be no doubt that the certificate issued is sufficient, in that respect, to meet the requirements thereof. The fact that a certificate had been denied other persons to construct and operate a telephone exchange within the corporate limits of Versailles at a prior hearing of the Commission is not sufficient, within itself, to show that plaintiff did not have a fair hearing before the Commission in this action, and that the action of the Commission was without evidence and was arbitrary and unreasonable.

The defendant Commission having proceeded according to law in the hearing of the petition, its action must be sustained, where such action is attacked collaterally in an equitable proceeding, unless such action is taken without any evidence to sustain it and is strictly arbitrary and unreasonable. All questions which it was required to decide as preliminary to taking action in the matter are conclusive upon courts in a collateral action. State of Missouri ex rel. South Western Bell Telephone Co. v. Public Service Commission of Missouri et al., 262 U. S. 276, 43 S. Ct. 544, 67 L. Ed. 981, 31 A. L. R. 807; Public Service Commission et al. v. City of Indianapolis et al., 193 Ind. 37, 137 N. E. 705.

While the issuance of such certificate of convenience and necessity by the Commission may create a hardship upon the plaintiff, yet that is the responsibility of the Commission. It cannot be said that the issuance of such certificate was wholly without any evidence and was arbitrary and unreasonable. Such action of the Commission cannot, therefore, be attacked collaterally in this action. It is not for this court to say whether or not the Commission acted wisely in the granting of such certificate, but it having proceeded legally, its finding and order must stand as against a collateral attack. Such action cannot be said to violate the "equal protection" or "due process" clauses of the Fourteenth Amendment to the Constitution of the United States.

The bill of complaint must be and is dismissed for want of equity. A decree will be entered accordingly.